Mr. Justice DAVIS
 

 delivered the opinion of the court.
 

 The main question in the case arises on the construction of the bond.
 

 The bond is peculiar in its character and unusual in its terms. It is not due until the close of the war of the rebellion, and not even then until specific demand is made for the money. Two things must- concurto give the obligee or his representative a right of action : the termination of the war and demand for the money. On demand, if the war has closed, the bond can be discharged, by the payment of the principal sum, without interest, but the borrower, if he chooses, can retain the money two years longer by paying legal interest. On the expiration of these two' years the principal sum and accruing interest is absolutely due and payable. So far the terms of the bond, it is admitted, are plain enough, but there is still another condition on which the chief controversy in the case depends. It is in the concluding words of the instrument.
 
 *
 

 It is proved in the case that the mone}’ lent was Confederate notes, although the fact is not so stated in the bond, and that after the 1st of April, 1864, the war then continuing, Crump provided himself with the funds for the return of the loan, but found no one in Richmond who was authorized to receive them, and he kept them ready to pay till they lost all value by the termination of the war.
 

 And it is contended by him, as the tender was prevented by the omission of Gavinzel to appoint an attorney in fact to represent him in his absence, the bond is discharged as completely as if the tender had been actually made and accepted.
 

 
 *319
 
 This would be so if Gavinzel was in default for not appointing an attorney. But the bond does not require him to make the appointment, nor to remain in Richmond. It gives Crump the right to make the tender, if the war continued after the 1st of April, 1864, but the tender could only be made in Richmond, and only to Gavinzel or to an attorney in fact in. person who was authorized to receive payment. In other words, the money was payable, if Gavinzel was in Richmond, or had an agent there to receive it, but was not payable if he was not there, or had no agent in the city. Crump may have understood that his right to discharge the bond by the tender was to become absolute if the war lasted (and so long as it lasted) after April 1st, 1864, but the contract does not admit of a construction consistent with that understanding. And the court cannot, without evidence authoi’izing it to be done, import words into the contract which would make it materially different in a vital particular from what it now is. There is no occasion to introduce parol evidence to explain anything in the contract, because there is no ambiguity about it, and it is not competent by this sort of evidence to alter the terms of a contract, by showing that there was an antecedent parol agreement or understanding between the parties different in a material particular from that which the contract contained. But if it were competent, the evidence fails to establish any such antecedent agreement. Gavinzel and Crump are the only witnesses, and their statements are inconsistent one with the other. In view of this difference in the recollection of the parties — to use no harsher term — how can the court say that Gavinzel agreed either to be in Richmond or to have an agent there to represent him ? Both parties were present ■when the bond prepared by Cannon on the direction of Gavinzel was read to them, and there does not seem to have been any objection to it, or any alteration proposed in the draft of it. Nor is there anything in the record to show that the parties did not, in this transaction, stand on equal ground, with equal intelligence and equal opportunities of judging of the hazard incurred. If so, hard as the bargain is, there is
 
 *320
 
 no good reason in the state of the pleadings why it should not be enforced. The answer sets up only two defences, the illegality of a contract based on Confederate notes, and the inability of Crump to discharge the debt, according to the last condition of the bond, by the neglect of Gavinzel on his departure to Europe, to appoint an attorney in fact to receive the money. But the last defence, as we have seen, is not sustained, and in regard to the first, this court has hold substantially that contracts, based on Confederate currency, will be enforced when made in the usual course of business .between persons resident in the insurgent States, and not made in furtherance of the rebellion.
 

 Whether or not this was a wagering contract, and therefore void, is not a question in the case, as no objection to it on that ground was taken in the answer or on the argument.
 

 The contract was plainly a contract of hazard, mutual hazard. Each party took risks, and each received a consideration for the risk thus taken. Manifestly, the leading object Gavinzel had in the transaction was to lend his money, so that it would not be repaid until the war closed, whether this event occurred before or after the 1st of April, 1864; and this object, on the contingency of his being able to go to Europe, the terms of his contract enabled him to accomplish. If the war ended by April, 1864, as he swears he thought it would, his purpose was attained, whether he went to Europe or not. But if the war continued longer, and he was able to get out of the Confederacy, he was in as good condition as if the war had terminated when he expected it would. There were, however, difficulties to be encountered in getting through the lines, represented by Gavinzel in his testimony “ as the greatest he ever met with in his life.” If unable to overcome these difficulties he would be obliged to stay in Richmond, and Crump would have the opportunity, if he chose to avail himself of it, of paying back the loan in the currency in which he received it.
 

 The inducements to Crump to enter into the contract were the present use of the money and exemption from interest, with favorable terms of repayment. Besides this, there was
 
 *321
 
 the chance that he might be able to repay the loan in Confederate money. Both parties not only ran the risk of the war closing before or after the 1st of April, 1864, but also of the value of money whenever the war did close, be that sooner or later, and of the ability of Gavinzel to leave the Confederacy. Certainly the wisdom of Crump in entering into a contract which contemplated such hazards cannot be commended, but if parties make contracts where there is no fraud, upon contingencies uncertain to both, with equal means of information, the courts cannot undertake to set them aside.
 

 Confederate currency was a commodity in trade, and the parties risked their judgment upon the future value of it, as they might have done upon any other commodity for sale in the community. . But if it be treated in this case as a loan of money, Crump agreed to repay it by a certain time after the termination of the war, in the currency which that termination should bring with it, and onerous as the condition is, he must abide by it.
 

 The views we have taken of this case are sustained by the decision in
 
 Brachan
 
 v.
 
 Griffin.
 

 *
 

 In that case Griffin agreed, in consideration of £25,000 paper money, to be paid him by Willis in the years 1780 and 1781, to pay the latter £2500 in specie in
 
 1790.
 
 Griffin brought his bill in chancery for relief against Brachan, the assignee. Fleming, J., denying the relief, said: “The contract iu this case was founded upon speculation on both sides. Griffin thought the present use of the money would be advantageous to him; and Willis, that it would be more beneficial to him to receive the specie at a distant day. The contract seems to have been fully understood by the parties, and to have been fairly entered into upon both sides.” The language used by this judge is applicable to this contract, which, after all, was a mere speculation upon the paper currency of the Confederacy. Besides this ease from Virginia, decided in 1803, there are l’eeent decisions in that State and Maryland which
 
 *322
 
 uphold contracts of hazard similar in many respects to the one in this case.
 
 *
 

 Decree reversed, and the cause remanded to that court, with instructions to enter a decree for the complainant,
 

 In conformity to this opinion.
 

 *
 

 The concluding words here referred to are the clause on page 311,
 
 supra,
 
 containing fourteen lines within brackets. — Rep.
 

 *
 

 3 Call, 375.
 

 *
 

 Boulware v. Newton, 18 Grattan, p. 708; Taylor
 
 v.
 
 Turley, 33 Maryland, p. 500.