Treadway v. Johnson.

DWIGHT TREADWAY, Respondent, v. JAMES B. JOHNSON, Appellant.

**St. Louis Court of Appeals, December 11, 1888.**

Sale, Conditional: STOCK ASSESSMENT PAID BY SELLER.  By written contract, the plaintiff sold and delivered to the defendant one hundred and ninety-nine shares of stock in a private corporation for ten thousand five hundred dollars cash.  It was agreed that the plaintiff should have the right, or option, at any time prior to January 1, then next ensuing, upon the payment of twelve thousand dollars and of all assessments made after the contract, to call for and take back the stock sold.  The plaintiff afterwards paid an assessment of two thousand dollars and subsequently, before January 1, notified the defendant that he declined to exercise the option reserved, or to take back the stock.  *Held* that the plaintiff was not entitled to recover from the defendant the amount of the two thousand dollar assessment which he had paid.

*Appeal from the St. Louis City Circuit Court.*—HON. GEORGE W. LUBKE, Judge.

REVERSED AND REMANDED.

*Klein & Fisse*, for the appellant.

The contract between plaintiff and defendant was an express contract, and the very matter in controversy was included therein.   In such a case the law does not raise any implied obligation.   A person cannot be bound by an implied contract, when he has made an express contract as to the same subject-matter.   1 Chitty on Contracts ( 11 Am. Ed. ) 89 ; 2 Black. Com.  *443 ; *Suits v. Taylor*, 20 Mo. App. 166, 173 ;   Leake on Contracts ( 1878 ), 86.   The only theory upon which the plaintiff could be entitled to recover the amount he paid as an assessment on the stock would be that he had paid the money to the use of defendant, at the defendant's

request, express or implied. 2 Chitty on Contracts (11 Am. Ed. ) 880-82 ; 2 Add. on Contracts ( Am. Ed. of 1883 ), 586, 588 ; Leake on Contracts ( 1878 ), 55, 77-78, 85-6. There is no pretense of any express request by the defendant to the plaintiff to pay the assessment on the stock. Neither will the law imply a request, because the matter was covered by the terms of an express contract between the parties and the plaintiff made the payment voluntarily to protect his own interest in the stock, and not for the use or benefit of the defendant.

*M. F. Taylor*, for the respondent.

The certificate issued by a corporation to its shareholders is a mere muniment of title, like a title deed. It is but a warrant or written acknowledgment of the ownership of an interest in the corporation, and is, in no sense, that interest itself. *Bank v. Curtz*, 99 Penn. 344 ; *Hubbel v. Drecell*, 21 Am. L. Reg. 452. Before a transfer of stock is registered on the books of the company, or the officers of the company have notice of the change of ownership and have recognized the new owner, the liability for all calls lies upon the person in whose name the stock is registered. *Railroad v. Gordon*, 16 M. & W. 804 ; *Skileton v. Horland*, 53 N. Y. 371 ; *Davis v. Essex & Co.*, 44 Conn. 582 ; *Daine v. Young*, 61 Me. 160 ; *Kellogg v. Sterwell*, 75 Ill. 68 ; *Cutting v. Damerell*, 88 N. Y. 410 ; Cook on Stock, sec. 258. After the transfer of shares the transferee becomes liable for all calls. *Webster v. Upton*, 91 U. S. 65 ; *Pullman v. Upton*, 96 U. S. 328 ; *Railroad v. Bourman*, 12 Conn. 530 ; Morawetz on Corp. 321 ; Cook on Stock, 256. If the transfer be not registered, causing thereby the transferer to pay calls, the transferee is bound both in law and equity to make repayment. *Johnson v. Underhill*, 52 N. Y. 203 ; *McNiel v. Bank*, 46 N. Y. 325 ; *Bank v. Cotman*, 20 Wend. 91 ; *Allen v. Graves*, 5 Law Rep.

478; *Towington v. Long*, 4 Com. Pl. 26; *Currie v. White*, 45 N. Y. 822; *Collins v. Bristow*, 6 Law Rep. 149; *Hawkins v. Manetby*, 6 Law Rep. 505. The rule is the same both at law and in equity. *Walker v. Bartel*, 86 Conn. 804; *Caselton v. Hobson*, 10 Law Rep. 47; *Wynne v. Price*, 3 De Gex & Gar. 310. Who, in Missouri, are stockholders in a corporation and what are their rights and liabilities? *Griswold v. Seligman*, 72 Mo. 110; *Fisher v. Seligman*, 75 Mo. 13. In Missouri, all stocks in corporations are personalty, shall be transferred only in the manner indicated in the by-laws, and after all calls have been paid. The right to sue for and collect all calls, dues and indebtedness from the shareholders to the company is added to the power of forfeiture for non-payment. R. S. secs. 738, 739, 740. When a cause is tried by the court without a jury parties desiring a review of the action of the lower court should ask instructions, for in no other way can errors of law be preserved. *Lee v. Porter*, 18 Mo. App. 377; *Cunningham v. Snow*, 82 Mo. 587; *Miller v. Breneke*, 83 Mo. 164; *Stevens v. Raub*, 9 Mo. App. 573; *Ford v. City*, 19 Mo. App. 467; *Hamilton v. Boggess*, 63 Mo. 233.

PEERS J., delivered the opinion of the court.

Plaintiff sued the defendant in the circuit court of the city of St. Louis to recover the sum of two thousand dollars under an alleged contract, the terms of which are set out in the following petition, to-wit:

"Plaintiff states that heretofore, to-wit, about the fifteenth day of June, 1887, there was issued to him certificate number 1, for one hundred and ninety-nine shares of the capital stock of the Forest Park Improvement Association, of the par value of one hundred dollars each; that on said stock plaintiff paid at or prior to the issuance thereof, ten thousand five hundred dollars, the remainder thereof being subject to call at any time by the board of directors of the association issuing

Treadway v. Johnson.

said stock, which association plaintiff says was a corpo
ration duly and regularly existing under and by virtue
of the laws of the state of Missouri; that heretofore,
to-wit, on or about the twentieth day of July, 1887,
he sold and delivered said stock to the defendant at and
for the price and consideration of ten thousand five
hundred dollars, with the understanding at the time that
the plaintiff should have the right to re-purchase said
stock at any time prior to the first day of January, 1888,
for the sum of twelve thousand dollars, it being under-
stood and agreed that the stock should remain upon the
company's books in the name of the plaintiff until such
time as the plaintiff had notified the defendant that he
did not intend to exercise the option, or until the right to
do so had expired by its own terms, and that in the mean-
time, should any calls be made upon said stock, it was
understood and agreed that each party, for the protection
of his interest in said stock, either present or contingent,
might pay said assessment, and that if before said
option should have expired, as aforesaid, any payment
was made on account of any such assessment, it should
be adjusted between the plaintiff and defendant.

"Plaintiff further alleges that by the terms of said
sale and said option to him he had the privilege to
protect his contingent interest in said stock, by paying
any assessment or call made thereon by the board of
directors of said company, and now charges and alleges
that any such payments for any such calls or assess-
ments by him made were, by the terms of the arrange-
ment so made between him and the defendant, to be for
the account of the defendant and as an advance to and
for him, to be paid back and refunded by defendant to
plaintiff in the event plaintiff should determine not to
re-purchase said stock.

"Plaintiff further alleges that, on or about the ——
day of ——, 1887, and after said sale, as aforesaid, a

call was duly and regularly made by the board of directors upon said stock, and the amount under such call due on the stock so carried on the books in the name of plaintiff, and as theretofore sold and delivered to the defendant, as aforesaid, was the sum of two thousand dollars ; that as the stock stood on the books in the name of plaintiff, as aforesaid, the call was made upon him, and demand for its payment hurriedly and peremptorily made ; that failing to find the defendant in time to have him make payment as called, and exercising his privileges aforesaid, he, in order to protect said stock, paid the amount of said call, to-wit, the sum of two thousand dollars ; he further alleges that under the terms of said agreement, afterward, he, on the —— day of ——, 1887, formally notified the defendant that he did not intend to exercise his option to re-purchase said stock, and thereupon demanded that the said sum of two thousand dollars, paid as an assessment on said stock, as aforesaid, be paid and refunded by the defendant to him ; that, by the terms of the agreement and the payment as made, it was the duty of the defendant to make immediate repayment of said amount to plaintiff, but that, unmindful of his obligation so to do, defendant has wholly refused to pay said sum, or any part thereof, and the same, though now long since due, remains wholly unpaid.

"Wherefore plaintiff prays judgment against the defendant for the sum of two thousand dollars, interest and costs, and for other and proper relief."

The answer of the defendant was a general denial of each and every allegation contained in the petition, with a prayer for costs.

The answer also contained a counter-claim upon a promissory note for four thousand dollars, executed by the plaintiff in favor of the defendant, and dated the seventh day of July, 1887, payable four months after date, with interest at the rate of seven per cent. per

annum from date, which note, it was alleged, had been negotiated by the defendant to the Continental Bank, which held it at the time of its maturity, and that the same not having been paid at maturity was protested for non-payment, and subsequently the defendant was obliged to take up and pay the same.

The note and protest thereon were filed as exhibits with the answer, and there was a prayer for judgment for the amount of said note with interest and four per cent. damages in lieu of protest fees thereon.

The note was due November 10, 1887. The answer and counter-claim of defendant was filed on December 19, 1887.

To this counter-claim the plaintiff filed a reply admitting the execution and delivery of the note pleaded as an offset and counter-claim, and that defendant was the holder and owner thereof, but every other allegation of the counter-claim was denied. By the reply the plaintiff further alleged that, at and before the maturity of said note, and at the time payment thereof was demanded, he made a lawful tender of the full amount due from him thereon, and again tendered to pay the amount due from him on said note, and prayed judgment for his costs in this behalf expended.

There was no deposit made in court in pursuance of the tender of the reply.

At the trial of the case it appeared in evidence that the plaintiff Treadway was a subscriber for one hundred and ninety-nine shares of stock of the Forest Park Improvement Association, a corporation, and that the certificate thereof came into his possession some time in May, 1887. The shares of stock were of the par value of one hundred dollars.

It also appeared in evidence that, some time prior to July 6, the plaintiff called on the defendant for the purpose of getting some money from him. After this

call the defendant wrote to the plaintiff the following letter:

"CITY, 919 OLIVE STREET,
"Wednesday Morning, July 6, 1887.

"*Dwight Treadway—Dear Sir:* In regard to loan, I beg to suggest —old fogies do not like the collateral (Forest Park Improvement Association stock) half paid up, and upon which they are liable to be called upon to pay up the remaining fifty per cent. for improvement. I suggest as a remedy, the following:

"I will give you the full amount paid in by you, ten thousand five hundred dollars, for your certificate, and at any time prior to January 1, 1888, you can call it back again, and I will give and return to you the same two hundred shares in consideration of ($12,000) twelve thousand dollars, and you to pay any assessments made in the meantime; or if I pay the assessments the amount so paid to be returned to me when you call for your stock back again.

"In a word, this saves you giving a note and obtains back all you put in with privilege of calling for it again prior to January 1, 1888, for twelve thousand dollars, and any additional assessments that may be paid on it in the meantime. (No transfer on books necessary).

"Respectfully,    J. B. JOHNSON.

"P. S. Should you need three or four thousand dollars additional, make out your ninety-day note, brokerage one per cent., interest seven, and I will cash it. No collateral, no indorser required.    J. B. J."

The latter part of this proposal was immediately accepted by the plaintiff, and out of it grew the four thousand-dollar note, which is the basis of the defendant's counter-claim in this action.

After receiving the foregoing letter, the plaintiff wrote the defendant the following answer:

Treadway v. Johnson.

"GREELEY-BURNHAM GROCER CO., }
   "ST. LOUIS, July 6, 1887. }

"*J. B. Johnson, Esq., My Dear Sir :* Yours of to-day was duly received, and I have been trying all day to raise you by telephone, but unsuccessfully; could you call here in the morning, nine o'clock, or if you will telephone me I will call at your office. Please let me hear from you as soon as you reach your office and oblige.           Yours,
                "DWIGHT TREADWAY."

Nothing further seems to have been done between the parties, except to exchange the money and the note for four thousand dollars, until July 19, at which time the plaintiff wrote the defendant the following :

"GREELEY-BURNHAM GROCER CO., }
   "ST. LOUIS, July 19, 1887. }

"*J. B. Johnson, Esq.—Dear Sir :* I have been sick for several days, and fear that I may not be able to come down town to-morrow at all, if it is hot. Won't you please call at the Continental Bank and give Mr. Baker check to his order for ten thousand dollars, and he will hand you the certificate of stock.

"Then please send me by mail receipt for stock, and your obligation to return it as we had agreed, and oblige.           Yours,
                "DWIGHT TREADWAY."

In pursuance of this letter, the defendant called upon the plaintiff the following day, and then the transaction was closed between them, and the terms of their contract reduced to writing, and each of the parties signed the same in duplicate, the plaintiff retaining one part and the defendant the other.

The contract then signed was in the following words :

"Received, St. Louis, Mo., July 20, 1887, of Dwight Treadway, certificate No. 1, for one hundred

VOL. xxxiii—9

and ninety-nine ( 199 ) shares stock in the 'Forest Park Improvement Association of St. Louis,' which certificate of stock has this day been sold and delivered to J. B. Johnson by Dwight Treadway for and in consideration of ten thousand five hundred dollars cash. Now, it is hereby agreed and covenanted by said J. B. Johnson, that Dwight Treadway has the right or option at any time prior to January 1, 1888, upon the payment of twelve thousand dollars in cash, and upon the payment of any sums that may be assessed. from and after this date against said one hundred and ninety-nine shares above stock, to call for and take said stock back again from said Johnson. Should any assessments made or called for on said one hundred and ninety-nine shares be not paid by Treadway, then, and in that event, assessments so advanced by Johnson shall be added to said sum of twelve thousand dollars and be repaid prior to January 1, time being considered an element of value in this option or contract to re-purchase as above. This agreement is in conformity to an understanding made and agreed to by letter of July 6, reference to which is hereby made.                    J. B. JOHNSON,

"In duplicate.          DWIGHT TREADWAY."

Nothing seems to have been said between the parties in relation to the transfer of the stock on the books of the company, except what appears in the above writings.

At the time when the writing of July 20 was closed, it appears that the defendant, at the request of plaintiff, paid ten thousand dollars to Mr. Baker, president of the Continental Bank, and five hundred dollars to the plaintiff, in consummation of the contract, and received the certificate number 1 for one hundred and ninety-nine shares of stock in the Forest Park Improvement Association, which was admitted to be duly incorporated.

On the third day of October, 1887, a call of ten per

cent. on the stock of said association having been previously made, the plaintiff, without consulting the defendant, and without making any request of defendant in regard thereto, paid the sum of two thousand dollars to the treasurer of the Forest Park Improvement Association.

This evidence was objected to as incompetent and immaterial by the defendant, but the court overruled the objection and defendant excepted at the time.

After the transaction of July 20, no conversation occurred between the plaintiff and the defendant in regard to the transfer of the one hundred and ninety-nine shares of stock in the company, and there never was any conversation between them in regard to the calls. All the transactions between them were in writing, represented by the letters which are in evidence in the case.

After the payment of the two thousand dollars by the plaintiff, it appears that he wrote to the defendant the following letter:

"Memorandum from Greely-Burnham Grocer Co.:

"St. Louis, October 10, 1887.

"*J. B. Johnson, Esq.—Dear Sir:* I don't know whether I will accept the option to buy back the F. P. I. A. stock from you or not, but whether I do or not I now have no voucher or receipt for the two thousand dollars I have already paid. I wish, therefore, you would pay the inclosed call and send me check for two thousand dollars for the previous call, and if I do take up the stock these will be included with interest in the payment.

"Yours,

"Dwight Treadway."

To this defendant wrote the following answer:

"City, 919 Olive street, Oct. 10, 1887.

"*Dear Sir:* Yours of to-day received. By reference to my letter to you of July 6th you will notice I

Treadway v. Johnson.

did not agree to advance your assessments. Read the letter which is referred to in the memorandum agreement between us. I return to you President Mansur's call of October 8, 1887.

"Respectfully,

"J. B. JOHNSON.

"To Dwight Treadway, Esq."

On October 11, 1887, the plaintiff wrote the following to the defendant.

"GREELEY–BURNHAM GROCER CO., }
"ST. LOUIS, October 11, 1887. }

"*J. B. Johnson, Esq.—Dear Sir:* Yours of yesterday received. The letter and the agreement provide for both my paying the assessments and for your paying them, evidently contemplating that they may be paid by either; but that there may be no question about the matter if you will send me check for $1,990 and pay the seven and one-half per cent. assessment, I will execute the paper releasing the option on the 199 shares which I now have until January 1. Won't you please do this to-day, as I may have to leave the city to-night to be gone two or three days? Please answer by bearer or can you call here?

"Yours,

"DWIGHT TREADWAY."

On the same day the defendant wrote the plaintiff the following:

"CITY, October 11, 1887.

"*Dwight Treadway—Dear Sir:* Yours of the 11th received. I do not wish to purchase your Forest Park Improvement Association stock. I have no funds to spare at this time.

"Respectfully,

"J. B. JOHNSON.

"To Dwight Treadway, City, Oct. 11, 1887."

On November 8, 1887, the plaintiff wrote the defendant the following:

" From Greeley-Burnham Grocer Co.

" St. Louis, November 8, 1887.

" *J. B. Johnson, Esq.—Dear Sir:* Please credit the two thousand dollars paid by me on the F. P. I. A. stock on my note of four thousand dollars, and let the note be presented here to-morrow, and I will pay the balance of two thousand dollars and interest.

" Yours,

" Dwight Treadway."

To this the defendant wrote the following:

" City, 919 Olive street, Nov. 9, 1887.

" *Dwight Treadway—Dear Sir:* Yours of 8th received. You must have strange ideas of business. You forfeited the stock of your own free will. Your four thousand dollar note and interest thereon is due at bank to-morrow. The note is held by the bank, and if not met by you steps will be taken to enforce payment at once. No credits are due you, and none will be made.

" J. B. Johnson."

On December 17, 1887, the defendant wrote the plaintiff the following:

" St. Louis, December 17, 1887.

" *Mr. Dwight Treadway—Dear Sir:* I beg to remind you that, under the terms of our contract in writing of July 20, 1887, and of the letter of July 6, 1887, therein referred to, you are entitled to demand of me a transfer and delivery to you of one hundred and ninety-nine shares of stock in the Forest Park Improvement Association in said contract mentioned, at any time prior to January 1, 1888, but not thereafter, on the payment to me of twelve thousand dollars in cash, and of the sum of fifty-four hundred and seventy-two and fifty one-hundredths dollars ($5,472.50), which has been advanced by me thereon on account of assessments on said shares since the same were transferred to me, making the total sum of seventeen thousand four hundred and seventy-two and fifty one-hundredths dollars

( $17,472.50 ).    As you have never hitherto apprised *me* of your intention not to avail yourself of said right, I desire to further notify you that I stand ready and willing to perform and carry out my part of said contract at any time within the period fixed by said contract of July 20, 1887.

"Respectfully,    J. B. JOHNSON."

To this the plaintiff sent the following reply:

"GREELEY-BURNHAM GROCER CO., ⎫
"ST. LOUIS, December 22, 1887.    ⎬

" *Dear Sir:*  Yours of December 17th came duly to hand and its contents noted by me with some surprise, for the reason that I have heretofore formally notified you that I did not intend to exercise the option reserved me in contract of July 20, 1887.

"Respectfully,    DWIGHT TREADWAY.

"To J. B. Johnson.  Dictated."

It appears from the plaintiff's evidence that the formal notification referred to in this letter of December 22, is contained in the letter of October 11, 1887, from the plaintiff to the defendant.

On the day when the note of four thousand dollars came due it was presented by the notary at the office of the Greeley-Burnham Grocer Company to the plaintiff in person, and he then offered the notary two thousand dollars and interest thereon.  Defendant never paid the four thousand dollar note, and the same was protested, the certificate of protest being introduced in evidence.

The note had been negotiated to the Continental Bank, where the same was discounted and the proceeds placed to the credit of the defendant, and the Continental Bank was the owner and holder of the note on the day of its maturity and when the same was protested. The defendant had notice of the protest, and two or three days thereafter took it up and paid to the bank $4,095.66.  The defendant never had any notification

from the plaintiff that the plaintiff would not avail himself of the option to re-purchase the stock until the receipt of the letter of December 22.

After the payment made by the plaintiff Treadway on account of this stock to the Forest Park Association, the defendant paid on account thereof twenty-seven and one-half per cent, on the one hundred and ninety-nine shares, namely, $5,472.50.

The first intimation which the defendant had from the plaintiff, that plaintiff had paid the assessment on October 3, was by the letter from the plaintiff to him of October 10. He had previously learned from Mr. J. M. Thompson, the treasurer of the company, that Mr. Treadway had made the payment.

Both Mr. Treadway and Mr. Johnson were members of the board of directors or managers of the company.

The plaintiff asked of the defendant while on the witness-stand, the following question :

Q. "I will ask you if you said anything to the board during the time from the twentieth of July, when this transfer was made, until the twenty-ninth of October, about your being the owner of this stock ?"

Defendant objected to the question as immaterial. The objection was overruled and defendant excepted at the time.

It appeared in evidence that calls or assessments were duly made by the board of managers of the Forest Park Improvement Association after July 20, and that the form of the notice sent to the stockholders of such assessments was as follows :

"By authority of a resolution passed at a meeting of the board of managers of the Forest Park Improvement Association, held August 26, 1887, a call is now made of five per cent. on the capital stock of the association, payable this day to Mr. J. M. Thompson,

treasurer, care Continental Bank, City, who will indorse payment on your stock certificate.

"Yours truly,

"ALVAH MANSUR, President."

This was the form of all the notices that were sent to all the shareholders of the association.

Mr. Treadway was a member of the board at the time when these calls were made, and it was in response to a similar notice that Mr. Treadway made the payment of two thousand dollars in one check on October 3, and the payment then made was on account of the assessments made payable September 2 and September 13, 1887.

While Mr. J. M. Thompson, the treasurer, was on the witness-stand, plaintiff's counsel asked him the following question:

Q. "Now, Mr. Thompson, let me ask you this question: Do you not recall the fact that you made special requests of Mr. Treadway, both through the telephone, and by letter, for him to make the payment on this stock?"

The question was objected to as immaterial. The court overruled the objection and the defendant excepted at the time.

The view taken by the court of the law upon the facts in this case was foreshadowed in the remarks of the court to be found in the record.

Plaintiff's counsel having asked the additional question: "And you urged the payment of it?" defendant again objected thereto as immaterial, whereupon the court ruled as follows: "The question seems immaterial, because, if, as appears in the evidence, the shares of stock remained in the name of Mr. Treadway at the time when the calls were made, then he was liable to suit for the amount of those calls, and if he discharged that liability the law will imply a promise from the defendant to make the amount good to him, if

Treadway v. Johnson.

the defendant is liable at all.   It is not essential to the plaintiff's case that he should show he was urged to pay it by anybody, but that there was a legal liability which he was bound to discharge."

It appeared in evidence also that the shares of stock remained on the books of the company in the name of Mr. Treadway.

This was substantially all the evidence in the case.

The court gave the following instruction in behalf of the plaintiff :

"The court declares the law to be that the legal effect of the written contract and letter of July 6, 1887, read in evidence, as between the parties hereto, concerning the transfer of stock mentioned in the testimony, was to pass to and vest in the defendant the legal title to said stock, provided it also appears in evidence, and the court sitting as a jury believes, that at the time when said contract was signed and delivered by the parties, July 20, 1887, defendant paid plaintiff the contract price of ten thousand five hundred dollars, and received from him the certificate for the one hundred and ninety-nine shares of stock."

To the giving of which instruction defendant at the time excepted.

The court, at the request of defendant, gave the following instruction :

"If the court, sitting as a jury, finds and believes from the evidence that the note of four thousand dollars, read in evidence, was by the defendant, before maturity, negotiated to and discounted in the Continental Bank, and that defendant received from said bank the proceeds thereof ; that at the maturity of said note the same was presented to the defendant at the place designated in said note and payment thereof demanded from him, that such payment was refused, and that thereupon said note was protested for non-payment, and that the defendant

was notified thereof, and thereafter took up and paid said note, and received the same back again from said bank, and that more than twenty days elapsed after protest of said note before the same was pleaded by this defendant as a counter-claim herein, then the court should find for the defendant the amount of said note with seven per cent. per annum interest thereon, and also four per cent. damages on the principal of said note in lieu of protest fees."

The defendant also asked of the court to give the following instruction, which the court refused, and defendant excepted at the time :

"If the court, sitting as a jury, finds and believes from the evidence that the only contract or agreement between the plaintiff and defendant, concerning the payment of assessments after July 20, 1887, on the shares of stock in the Forest Park Improvement Association mentioned in plaintiff's petition, was that contained in the written contract between them dated July 20, 1887, and the letter of July 6, 1887, referred to therein, read in evidence ; and if the court further believes from the evidence that defendant did not request the plaintiff to pay either of the assessments on said shares of stock sued for by the plaintiff herein, but that the plaintiff paid them of his own accord, and before he had notified the defendant that he did not avail himself of the option or privilege granted him in said written contract to purchase said stock at any time before January 1, 1888, then the plaintiff is not entitled to recover, and the court should find for the defendant on the plaintiff's cause of action."

On the tenth of February, 1888, the court rendered a verdict and finding in favor of the plaintiff and against the defendant on the plaintiff's cause of action in the sum of $2,017.51, and in favor of the defendant against the plaintiff on the defendant's counter-claim in the sum of $4,325.64, and rendered judgment in favor of the

defendant and against the plaintiff for the sum of $2,308. 13, bearing seven per cent. interest, to which finding and judgment of the court defendant excepted at the time.

On the following day the defendant filed his motion for a new trial.

Appellant avers that there is manifest error in the action of the circuit court at the trial of this cause, materially affecting the merits thereof, and materially affecting the rights of the appellant therein, in this : (1) In the granting of the instruction asked by plaintiff ; (2) in refusing to grant the instruction asked by defendant ; (3) in construing the terms of the written contract between the parties, contrary to its plain letter and intent ; (4) in holding that the defendant was liable as on an implied obligation, where the only obligation of the defendant arose out of and upon an express written contract ; (5) in holding that the payment made by plaintiff was made to the use of defendant, when, in fact and in law, it was made by plaintiff for his own benefit and to protect his own interest ; (6) the contract alleged in the petition was not proved, and the judgment is erroneous.

This case must be determined upon the written contract entered into between the parties. They had no conversation concerning the matter, the entire matter is in writing, hence there is no conflict of evidence. We look to the terms of the written contract to ascertain and determine the rights and duties of each against and towards the other.

The first proposition is a letter written by the defendant to the plaintiff of date July 6, 1887, evidently in reply to some request of plaintiff for the use of money. Standing alone this letter forms no contract, and if nothing further had been done in relation to the matter, no rights would have accrued thereunder. It is at best a mere proposal which might lead to a contract,

and its terms might be changed or modified to suit the parties. It furnishes the starting point in the consideration of the case, and is the foundation of the contract afterwards entered into; hence its importance. Let us examine it with care and ascertain its elements. It starts out by saying : "In regard to loan, I beg to suggest old fogies do not like the collateral (Forest Park Improvement Association Stock)." From this it is clear to my mind that Treadway had made application to Johnson for the loan of money, and not wishing to give personal or real security had offered the "Improvement Stock" as collateral. Treadway evidently did not want to part with his interest in the company, nor did Johnson want to loan his money on "half-paid up" collaterals, therefore Johnson proposes a remedy, *i. e.*, to give to plaintiff the full amount paid in by him, namely, ten thousand five hundred dollars.

We look into the testimony for one moment and we find that at this time (July 6, 1887) there was paid in on the stock forty-two and one-half per cent., making on two hundred shares exactly ten thousand five hundred dollars. Now it is perfectly clear that when the defendant said that he would give plaintiff *all* he had paid in for his certificate, and that plaintiff would obtain back all he had put in, if called for prior to January 1, 1888, he had reference only to the amount of ten thousand five hundred dollars, which had been paid in at the date of the letter. In this connection and coupled with this offer of purchase, the defendant agrees to re-sell the shares to plaintiff for twelve thousand dollars, any time prior to January 1, 1888. "You (plaintiff) to pay any assessments made in the meantime," "but if I (defendant) pay the assessments, the amount so paid to be returned to me when you call for your stock back again."

Language could hardly make a proposition plainer;

there is nothing hidden in it; it is a plain statement with a plain meaning. The assessments likely to be made upon the stock were present in defendant's mind when the proposal was written.

The stock did not belong to the defendant, he held it for the plaintiff's benefit for a certain time, to-wit, the first day of January next ensuing, at which time the plaintiff had a right to take it back upon the payment of twelve thousand dollars, together with all sums which the defendant had been obliged to pay on account of assessments made in the meantime. The defendant never intended to pay the assessments, his language cannot be tortured into any such meaning, nor did he intend to have them paid for his benefit or use by the plaintiff. He intended and as far as his language goes, expected, plaintiff to redeem his stock, by paying to defendant the money advanced and the interest thereon; in other words twelve thousand dollars, the difference of fifteen hundred dollars between the amount loaned and the amount demanded in return being for the use of the money during the six months.

Thus matters stood until the nineteenth of July, 1887, when plaintiff wrote a letter to the defendant concerning the matter, in which he requests the defendant to give a check for ten thousand dollars to Mr. Baker at the Continental Bank and get from him the stock. In this letter the plaintiff says: "Then please send me by mail a receipt for the stock and your obligation to return it as we have agreed." This must be treated as an acceptance of the proposal of July 6, 1887. Nothing further was done until the twentieth of July, when the parties seem to have met, and the ten thousand dollars was paid to Mr. Baker, and five hundred dollars to the plaintiff, and thereupon the contract of July 20, 1887, was executed by the parties respectively, which is the ultimate agreement or contract. It is the ratification of the contract contained in the proposal of July 6, and

the acceptance of July 19, above alluded to. A careful analysis shows that it varies the proposal only in a single respect and that is that it covers one hundred and ninety-nine instead of two hundred shares of the stock. This fact does not affect the matter one way or the other. The proposal says two hundred shares, and the contract calls for one hundred and ninety-nine shares. The proposal says you pay "any assessments in the meantime." The contract provides in case Treadway did not pay the assessments, the amount so advanced by Johnson should be added to the twelve thousand dollars, and repaid by Treadway at the time he got his stock back. Now the agreement is fully expressed in such plain and unambiguous language, that nothing is left to inference or implication.

When we come to look into the evidence we are forced to the conclusion that the plaintiff has failed to prove the case stated in his petition. The contract between the parties was an express contract evidenced by the writing, no terms or conditions are to be imported into the contract made upon which to base, by implication of law, obligations foreign to the intentions of the parties at the time the contract was made. We fail to find in the record any agreement in reference to adjusting repayments of assessments after the expiration of the option.

But attention is directed to the case of *Gavinzel v. Crump*, 22 Wall. 308, as being decisive of the principle here involved. The facts in that case were: The plaintiff loaned to the defendant thirty-two hundred and sixty dollars, in Confederate notes, in November, 1863, at a time when the value of said notes in gold coin was only two hundred and four dollars. The defendant executed a bond for the repayment of the sum of thirty-two hundred and sixty dollars, by which it was agreed that the money was not to become due and payable until the end of the civil war; that no interest

should be chargeable in the meantime ; that the money should not become due unless demand was made for it, and that if Crump, at the time of such demand, was not prepared to pay the sum, he should have the right to retain it for two years longer, when it should become absolutely payable. The bond also contained a condition that at any time after the first day of April, 1864, and during the continuance of the war, if the plaintiff, or any duly authorized agent of his, should be present in person in the city of Richmond, Crump should have the right, if he elected so to do, to tender said sum, without interest thereon, to the plaintiff in person or to such attorney in fact in person, in said city in current bankable funds, and upon such tender being made, the plaintiff or his attorney in fact should be bound to receive the same in full payment and satisfaction of the obligation. But this tender was not to be made except to the plaintiff or attorney in fact in person in the city of Richmond. After the end of the war the plaintiff demanded payment of the thirty-two hundred and sixty dollars, in lawful money of the United States, which the defendant refused to pay, whereupon the plaintiff filed his bill, praying a sale of the property which had been conveyed in trust and a payment to him out of the proceeds of the amount which he claimed.

The contention of the defendant was that he was at all times after the first of April, 1864, and during the continuance of the war, ready to discharge the debt in current bankable funds to the plaintiff or to his agent, and that he had such funds always on hand, but that neither the plaintiff nor any agent of his was in Richmond to receive the money. The court below decreed that the trust deed should stand as a security for two hundred and four dollars, lawful money of the United States, and that if said sum was not paid in two months

the property conveyed should be sold. From this decree the plaintiff appealed.

In the course of the opinion, rendered by Mr. Justice Davis, it is said : ''By the terms of the bond the money was payable if Gavinzel was in Richmond, or had an agent there to receive it, but was not payable if he was not there or had no agent in the city. Crump may have understood that his right to discharge the bond by the tender was to become absolute if the war lasted, and so long as it lasted after April 1, 1864, but the contract does not admit of a construction consistent with that understanding. And the court cannot, without evidence authorizing it to be done, import words into the contract which would make it materially different in a vital particular from what it now is. There is no occasion to introduce parol evidence to explain anything in the contract, because there is no ambiguity about it, and it is not competent by this sort of evidence to alter the terms of a contract, by showing that there was an antecedent parol agreement or understanding between the parties different in a material particular from that which the contract contained. * * * Both parties were present when the bond prepared by Cannon on the direction of Gavinzel was read to them, and there does not seem to have been any objection to it or any alteration proposed in the draft of it. Nor is there anything in the record to show that the parties did not, in this transaction, stand on equal grounds, with equal intelligence and equal opportunities of judging the hazard incurred. If so, hard as the bargain is, there is no good reason in the state of the pleadings, why it should not be enforced. The answer sets up only two defenses, the illegality of the contract based on Confederate notes, and the inability of Crump to discharge the debt according to the last condition of the bond, by the neglect of Gavinzel on his departure to Europe to appoint an attorney in fact to receive the

money.   But the last defense, as we have seen, is not
sustained, and in regard to the first this court has held
substantially that contracts based on Confederate
currency will be enforced when made in the usual
course of business between residents in the insurgent
states, and not made in furtherance of the rebellion.
The contract was plainly a contract of hazard—mutual
hazard.   Each party took risks and each received a
consideration for the risk thus taken.   *   *   *   Cer-
tainly the wisdom of Crump in entering into a contract
which contemplated such hazards cannot be commended,
but if parties make contracts, where there is no fraud,
upon contingencies uncertain to both, with equal means
of information, the courts cannot undertake to set them
aside."

We think the principle announced by Mr. Justice
Davis in this case may well be applied to the one before
us.   The contract in this case was founded on specula-
tion on both sides.   Treadway thought the present use
of the money would be advantageous to him, and John-
son, that it would be more beneficial to him to receive
the cash at a distant day, or in case of failure to pay by
Treadway, retain the Forest Park Improvement Associa-
tion stock.   It is possible that the contract made
between plaintiff and defendant left the advantage with
the defendant, but if parties make contracts with equal
means of information, where there is no suggestion of
fraud, imposition or over-reaching, charged or made,
the courts cannot undertake to set them aside.   The
contract seems to have been fully understood by the
parties and to have been fairly entered into upon both
sides.   The result of the decision of the trial court is, to
relieve the plaintiff of some portion of the burden rest-
ing upon him by means of the contract, upon the theory,
no doubt, that justice required the court to equalize the
rights of the parties.   However, it is not in the province

of the courts to relieve against hardships, or equalize the rights of the parties contrary to the terms of their explicit contracts, however much they might feel inclined to do so.

Plaintiff cites us to *Walker v. Bartlett*, 18 C. B. 863 ; *Johnson v. Underhill*, 52 N. Y. 203 ; *Kellogg v. Stockwell*, 75 Ill. 68. In all of these cases we find a very material difference from the one before us. "In these cases there was an absolute sale of the stock, subject to assessments, made by one party to another, with a delivery of the certificates to the purchaser, and without any further agreement of any kind, and that by reason of the purchaser's neglect to have the stock transferred on the books of the company to his name the seller is compelled to pay an assessment on the stock. A payment made under such circumstances, it is held in these cases, is a payment made for the purchaser's benefit, which, *ex aequo et bono*, he should refund. The principle of these decisions is, that the sale of the stock, although not entered upon the books of the company, is valid in equity and transfers the title to the purchaser ; that the vendor in whose name the title stands upon the books has done everything required of him to be done to transfer the title of the stock to the vendee, and that it becomes the vendee's duty to cause the stock to be transferred upon the company's books into his name. The cases proceed upon the theory that the vendor in whose name the title is thus allowed to remain standing upon the books of the company holds the legal title as a trustee for the benefit of the vendee, and in the event that the trustee is compelled to make payments of assessments, or is liable to be called upon for payment, the *cestui que trust* is bound to repay or indemnify, as the case may require.

In the case at bar the stock remained in the plaintiff's name, by reason of the plaintiff's own agreement, the contract to that effect being equally binding upon

him as upon the defendant. A promise cannot be implied in the face of an express agreement. *Planing Mill Co. v. Brundage*, 25 Mo. App. 271; *Davidson v. Bierman*, 27 Mo. App. 656; *Houck v. Bridwell*, 28 Mo. App. 645, 648.

Two proposition are to me quite plain: (1) The plaintiff has alleged in his petition a contract he has failed to prove; and (2) the proof does not permit of any implied contract, because an express contract is shown.

By the terms of this express contract the plaintiff has done no more than he was required to do; what he did was of his own mind, and for his own benefit. He did it to protect his own interest because he expected at the time to avail himself of his option and re-purchase the stock. True, as the case has turned, the defendant has received the benefit, but that alone does not entitle the plaintiff to maintain an action upon an implied promise to recover.

The judgment will be reversed and the cause remanded to be disposed of as indicated in this opinion. All the judges concur.