**J. L. JACOBSEN, Plaintiff,**

v.

**LUCKENBACH STEAMSHIP CO., Inc., Defendant.**

**Civ. No. 60-318.**

United States District Court
D. Oregon.

Dec. 13, 1961.

Alex L. Parks, Dusenbery, Martin, Beatty & Parks, Portland, Or., for plaintiff.

Erskine Wood, Wood, Wood, Tatum, Mosser & Brooke, Portland, Or., for defendant.

KILKENNY, District Judge.

This is a common law action by plaintiff against defendant to recover certain pension benefits as a third party beneficiary. Plaintiff is a Columbia River pilot. Defendant is the owner and operator of a fleet of ocean going vessels operating in intercoastal waters and on the high seas. Prior to March 27, 1947, defendant occasionally engaged the services of plaintiff as a Columbia River pilot and from that date through November 1959, when plaintiff retired at the age of 68, defendant employed the plaintiff at a regular monthly salary as a Columbia River pilot on its vessels on the Columbia River and its tributaries.

In October 1953, Pacific Maritime Association,[1] acting for plaintiff, entered into a contract with the International Organization of Masters, Mates & Pilots, West Coast Local No. 90.[2] This agreement was amended from time to time until July 28, 1958, when an agreement was signed which was entitled "Agreement Covering Offshore, Intercoastal and Alaska Trade."[3] This agreement refers to and incorporates as part of its provisions another agreement between PMA and Local 90 known as the Pension agreement under which, in addition to a certain Declaration of Trust, the plaintiff claims his rights. The agreements were thereafter amended from time to time, but the amendments are of no particular significance. The declared purpose of these agreements was to promote more stable labor relations for the defendant with its Licensed Deck Officer employees covered thereby and to grant said employees certain rights, benefits and privileges in lieu of and in addition to basic wages and to improve the efficiency of the operations of defendant and other members of the PMA.

After plaintiff's retirement in December 1959, plaintiff submitted to defendant a request for information concerning a pension. The request was forwarded by defendant to the PMA. Further correspondence was had between the parties with reference to the pension claim, which correspondence found its way to the trustees of the Pension Plan, although plaintiff had no direct correspondence with or made any formal application to the trustees of said Plan. Plaintiff was advised that he had no rights under the agreements between PMA, Local 90 and said trustees.

Plaintiff's principal contentions are as follows:

1. That he is a third party beneficiary under the agreements between the defendant, as represented by PMA and Local 90, which he claims was the sole bargaining agent for all Licensed Deck Officer employees and that he falls within any reasonable definition of a "Licensed Deck Officer", and is therefore covered by the Pension and Trust agreements and entitled to their benefits.

2. That defendant, by its conduct, is precluded on the basis of estoppel from denying to plaintiff his pension rights.

The defendant contends:

1. That plaintiff is not a beneficiary, third party or otherwise, under the agreements between defendant and Local 90 and that it never was the intention of the parties to include plaintiff as such a beneficiary.

2. That assuming, *arguendo*, plaintiff is such a beneficiary, his sole remedy would be to invoke the procedure provided by the National Labor Relations Act and the agreements and, for that reason, this Court has no jurisdiction.

In view of my ultimate conclusion, a decision on the jurisdictional point would control and it would not be necessary to pass on the plaintiff's common law claims. However, it would seem that this cause is earmarked for appeal and since there are certain issues of fact involved on the plaintiff's first and second contentions, I believe it would be well for me to express my views on those issues and make findings on the evidence presented.

I. The language of the Pension Plan agreement which seems to be the basis of plaintiff's claim directed that all employers party to the Plan "shall contribute to the MMP–PMA Pension Fund for each day of covered employment of eligible *Licensed Deck Officers* * * *." No such contribution was made by defendant for plaintiff.

The agreement provided that upon retirement of an eligible Licensed Deck Officer he should present an application to the trustees of the Pension Trust for his pension payments. The trustees were impowered to determine the *eligibility* of the applicant in accordance with the conditions of the agreement. The Master

1. Hereafter PMA.

2. Hereafter Local 90.

3. Hereafter Master agreement.

agreement between PMA and Local 90 made specific reference to the Welfare & Pension Plan agreements.[4] The Pension agreement (Exhibit 2) contains a definition of covered employment which would exclude plaintiff.[5] A contributing employer is likewise defined:

"§ 14. *Contributing Employer.* 'Contributing Employer' means any employer on whose behalf the Association executes this Agreement or who obligates himself under Article VI of this Agreement."

The covered employee is also defined.[6] Only an *eligible* Licensed Deck Officer is entitled to the benefits under the Pension Plan.[7] The trustees are the sole judges of the eligibility and other disputes which might arise under the Pension Plan (Exhibit 2, Article V, § 5) and their decision is final and binding on all parties, including *licensed deck officers.* The validity of claims against the Pension Trust Fund are governed exclusively by the Pension Plan agreement, the Declaration of Trust and the rules and regulations adopted by the trustees.[8] The language of the Declaration of Trust is to the same effect.[9] The Trust provides a full and complete administrative

4. "Section 36. *Welfare and Pensions.*
"The Employers agree to contribute to a Welfare Fund to be collected, administered and applied in accordance with the Welfare Plan Agreement; * * *
"The Employers shall provide for pensions to Licensed Deck Officers in accordance with the Pension Plan Agreement; * * *."

5. "§ 10. *Covered Employment.* 'Covered Employment' means employment prior to January 1, 1956 for which a contribution was paid into the MMP–PMA Welfare Plan or a plan merged into that welfare plan and employment after December 31, 1955, by a Contributing Employer. * * *"

6. "§ 13. *Covered Employe.* 'Covered Employe' means any licensed deck officer employed in Covered Employment or having credited past or future service under the Pension Plan. All such licensed deck officers shall be automatically included within this plan and shall participate in it and are eligible for benefits under this Pension Plan on satisfying all the requirements therefor."

7. "ARTICLE V. *Benefit Payments* § 1. *Benefit Payments Generally.*
"(a) An eligible licensed deck officer who makes application in accordance with this Pension Plan shall be entitled upon retirement to receive the specified monthly benefit subject to all the provisions of the Pension Plan. Benefits shall be payable commencing with the first full month when the licensed deck officer has fulfilled all of the conditions for entitlement to benefits and ending with the payment for the month in which the death of the Pensioner occurs.
"(b) To be eligible to receive any pension benefit the licensed deck officer must have filed an application for past service credit within the time fixed by the Trustees and an application for pension benefits and have retired as defined in this Agreement. A licensed deck officer may continue to work while his application is being considered; however, a licensed deck officer shall be entitled to retroactive pension benefits for any month following the month in which he last worked in regular employment or the month in which he filed his application for pension benefits, whichever occurrence is the later, except the Trustees may fix an earlier time for the commencement of benefits if they find in their sole discretion that extenuating circumstances prevented the licensed deck officer from making timely application."

8. Article XI (Exhibit 2). "* * * A licensed deck officer who has been denied benefits by the Impartial Chairman shall have no recourse against the Fund, the Trustees, the Contributing Employers, the Association or the Union, or any of the officers, members or agents of any of them."

9. Exhibit 3, Article II, Section 4.
"Neither the Employer, the Association, the Union, any branch of the Union, any labor organization, any beneficiary of the pension plan, nor any other person shall have any right, title or interest in this trust other than as specifically provided in this agreement, and no part of this trust shall revert to the Union, any branch of the Union, any labor organization, the Association, any employer, any beneficiary, any employe or any other person or entity other than by way of a pension as specifically provided in this Agreement. Neither the trust nor any payment required to be made to this trust shall be in any manner liable for or subject to the debts, con-

procedure for the processing of claims such as that of plaintiff.[10] Under the provisions of the Trust no employee or other beneficiary shall have a right to claim a pension except as specified in the Trust or the Pension Plan.[11]

██ The Master agreement contains a section on the wages to be paid to the licensed deck officers covered by the agreement. Although plaintiff claims to be a licensed deck officer, he concedes that he is not covered by the section on wages, hours and working conditions. He testified that he personally negotiated with defendant on all of those matters. It is significant that the master and other agreements specifically covered and provided for pilots who were employed as regular crew members on ships in the Alaska Trade. These pilots were recognized even to the extent of fixing a base monthly wage rate.[12] The specific inclusion of pilots engaged in the Alaska Trade is rather conclusive that the parties did not intend to include Columbia River pilots, such as the plaintiff. Furthermore, the agreements cover only masters, mates and pilots of Local 90. Plaintiff concedes that he was not a member of Local 90. He admits that he was a member, as a pilot, of Local 98. The evidence is conclusive that Columbia River pilots, such as plaintiff, were not accepted as members of Local 90 during the period in question. The express inclusion in the contract of pilots in the Alaska Trade demands an application of the well known rule of contractual construction *expressio unius est exclusio alterius*. United States ex rel. Tennessee Valley Authority v. Powelson, 4 Cir., 1941, 118 F.2d 79, 88; 12 Am.Jur., Contracts, § 239, p. 769. The Master agreement from time to time refers to periods when a master or other licensed deck officer is required to perform pilot's services.[13] If pilots, such as plaintiff, were "licensed deck officers" within the meaning of that phrase as used in the agreement, it would be entirely unnecessary to include this reference. The final paragraph of Section 29 quite conclusively establishes that the parties had no intention of including the plaintiff.[14] A business contract must be construed with such business sense as it naturally would be understood by intelligent men of affairs. E. I. Du Pont De Nemours & Co. v. Claiborne-Reno Co., 8 Cir., 1933, 64 F.2d 224; Erie R. Co. v. Ohio Public Service Co., 6 Cir., 1932, 62 F.2d 83. The law does not permit a contract to be remade by the courts. Dermott v. Jones, 2 Wall. 1, 69 U.S. 1, 17 L.Ed. 762; Gavinzel v. Crump, 22 Wall. 308, 89 U.S. 308, 22 L.Ed. 783. This was clearly a business contract between the parties involved. Defendant was dealing only with licensed deck officers who were members of Local 90. To enlarge the agreements so as to include the plaintiff would amount to nothing less than rewriting the agreements. Certain evidence was received by the Court to place it in the position of

tracts or liabilities of the Association, any employer, the union, any labor organization, any beneficiary, or any employe. No property of this trust nor any benefits payable in accordance with the pension plan shall be subject in any manner to anticipation, alienation, sale, transfer, assignment, pledge, encumbrance or charge by any person other than the Trustees or by the Trustees for any purpose other than as herein provided and any attempt to do so shall be void."

10. Exhibit 3, Article V.

11. Exhibit 3, Article VIII, Section 2. "No employe or other beneficiary shall have any right or claim to a pension except as specified in the pension plan and the policy or policies, or contract or contracts, if any, purchased or entered into by the Trustees. * * * "

12. Exhibit 1, Section 8(d) (p. 18) "Pilots employed as regular crew members on ships in the Alaska Trade shall be paid a base monthly wage rate of $755.97."

13. Exhibit 1, Section 29, (pp. 46–47) "(a) When a Master, or other Licensed Deck Officer with the required pilot endorsements, *is required to perform Pilot's services*, * * * ."

14. Exhibit 1, Section 29, (p. 48) "The employer shall have the right to select his own pilot, provided he is a member of the organization." (Alaska Trade)

the contracting parties at the time the agreements were made. While it was proper to receive such evidence, Miller v. Robertson, 266 U.S. 243, 45 S.Ct. 73, 69 L.Ed. 265; Seaver v. United States Plywood Corporation, 9 Cir., 1959, 273 F.2d 36, it cannot be used to change, vary or contradict the express terms of the written contract. Commodity Credit Corporation v. Rosenberg Bros. & Co., 9 Cir., 1957, 243 F.2d 504.

Plaintiff argues that even though Local 90 did not intend to bargain for him, and even though he is not specifically covered by the terms of the agreements, nevertheless, the provisions of the National Labor Relations Act required Local 90 to bargain for him. He argues that a contract which would not cover his employment would violate Section 8(a) (3) of the Act (29 U.S.C.A. § 158(a) (3)). Plaintiff relies on the well recognized principle that unions which are sole bargaining representatives of employees must also bargain for non-union employees falling within the same class or category. It is clear that an employee may be a third party beneficiary of an agreement between his employer and a union representing employees of the same classification, even though he is not a member of the union. Springer v. Powder Power Tool Corp., 220 Or. 102, 348 P.2d 1112; Textile Workers Union of America v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972. Plaintiff is not entitled to the benefit of the rule, in that evidence clearly indicates that plaintiff was not in the same class or category as the members of Local 90. It is clear that Local 90 represented only regular crew members and did not represent inland pilots, with the exception of pilots in Alaska waters. The duties of Columbia River pilots are entirely different from the duties of licensed deck officers of Local 90. The fact that plaintiff was a member of Local 98, possibly its sole member, would rather clearly demonstrate that Local 90 did not represent persons in his class or category.

Even if I would hold, which I do not, that plaintiff was a non-union employee within the same classification as the licensed deck officers mentioned in the contract and that he was unlawfully excluded from the pension benefits thereof, I would have no power or authority to proceed. I would then be holding that defendant had committed an unfair labor practice under the National Labor Relations Act. In such case, the National Labor Relations Board has exclusive jurisdiction to adjudicate the issue and proceed thereon. 29 U.S.C.A. § 160(a). The Board has exclusive power to determine whether unfair labor practices have been committed, and to determine the action the employer must take to remove or avoid the consequences of his unfair labor practice. National Licorice Co. v. N. L. R. B., 309 U.S. 350, 60 S.Ct. 569, 84 L.Ed. 799; May Department Stores Co. v. N. L. R. B., 326 U.S. 376, 66 S.Ct. 203, 90 L.Ed. 145. Federal courts cannot intervene in matters expressly placed within the competence of the Board except by way of review or on application of the Board. Garner v. Teamsters, etc., 346 U.S. 485, 74 S.Ct. 161, 98 L.Ed. 228.

The doctrine of estoppel on which plaintiff relies as an additional ground of recovery has no application. Plaintiff argues that the Pension Plan and associated documents purport to include the plaintiff as a "covered employee." He quotes from a booklet [15] published by the parties to the agreements, which booklet describes the eligible classes of employees as those whose employment is covered by the collective bargaining agreement between defendant and Local 90. That provision could not assist the plaintiff unless he took the additional step of reading the collective bargaining agreement. He would then discover that such agreement only covered employees who were members of Local 90. Furthermore, the provision on which the plaintiff relies refers to the Welfare Plan rather than to the Pension Plan. The Welfare is not involved in this litigation.

15. Exhibit 11.

Plaintiff's plea of estoppel is without merit.

Attention has already been called to the procedure outlined for eligible claimants under the Pension Plan and Trust agreement. Four of the Trustees are appointed by Local 90 and four by defendant. In case of a deadlock, a provision is made for arbitration. The Trustees are the judges of the standard of proof required on any particular claim. The plaintiff directed certain letters to defendant but the Trustees never participated in the correspondence. No claim was ever filed by plaintiff with the Trustees. Defendant has no obligation under the Pension Plan to any individual for the decisions of the Trustees.[16] The fact that defendant may have failed to make contributions is not significant.[17] Under the Pension Plan the Trustees, not the courts, have the power to determine the amount and extent of a covered employee's benefits.[18]

Before an individual beneficiary of a collective bargaining agreement may institute action in Federal court for breach of the agreement he must first exhaust the administrative remedies under the collective bargaining agreement if that is required by the law of the state in which the District Court is located. Transcontinental & Western Air, Inc. v. Koppal, 345 U.S. 653, 73 S.Ct. 906, 97 L.Ed. 1325. It appears that the contracts in question were made in California. That state requires the exhaustion of administrative remedies under said circumstances. Barker v. Southern Pacific Company, 9 Cir., 1954, 214 F.2d 918. Even if the Oregon law was applicable, the plaintiff would be required to first exhaust his administrative remedies. Judge Solomon so held in Peoples v. Southern Pacific Company, D.C.Or.1955, 139 F.Supp. 783, aff'd, 9 Cir., 1956, 232 F.2d 707.

Cases such as Springer v. Powder Power Tool Corp., supra, following the general rule that an employee may sue an employer to collect benefits accruing to the employee under a collective bargaining agreement made between the employer and the union, have no application to the facts before me. In those cases, the obligation to pay was that of the employer. Here, the obligation, if any, is that of the Trustees.

Again assuming that plaintiff was in truth and in fact a third party beneficiary under the contracts, he certainly would have no greater rights than the direct beneficiaries, the members of Local 90. A claim under the agreements would necessarily be against the Trustees rather than the defendant, and assuming that such an action would lie, the Trustees would be necessary parties defendant to this cause under F.R.Civ.P. Rule 19, 28 U.S.C.A. Where rights sued upon arise out of contract, all parties thereto are deemed indispensable and should be joined. Ward v. Deavers, 1953, 92 U.S.App.D.C. 167, 203 F.2d 72. An indispensable party is one whose rights must be determined in order to finally give complete adjudication and determination to the controversy, or whose rights will necessarily be affected by any determination of the controversy before the Court. Shell Development Co. v. Universal Oil Products Co., 3 Cir., 1946, 157 F.2d 421, 424; Lumbermen's Mutual Casualty Co. v. Elbert, 348 U.S. 48, 75 S.Ct. 151, 99 L.Ed. 59. Before an award could be made to plaintiff, even on his own theory, the Court would be compelled to construe the Trust agreement

16. Exhibit 3, Article VI, Section 5 (p. 13) "Neither the Association, any employer, nor the Union or any branch of the Union shall be liable in any respect for any of the obligations or acts of the Board or a Trustee or Trustees."

Exhibit 3, Article VIII, Section 2 (p. 16) "No employe or other beneficiary shall have any right or claim to a pension except as specified in the pension plan and the policy or policies, or contract or contracts, if any, purchased or entered into by the Trustees. * * *"

17. Exhibit 2, Article V, § 9.

18. Exhibit 2, pp. 9, 10, 13, 14, 17.

and determine the plaintiff's rights thereunder. This the Court cannot do without the presence of the Trustees.

No issue is raised as to the validity of the procedure, rules or regulations of the Trustees.

Counsel for defendant may prepare findings, conclusions and judgment in accordance with the views herein expressed.