allowance if the quarters are not adequate.

It may be that the Government would be entitled to some deduction from plaintiff's station allowance for the rental value of the Government-owned quonset hut occupied by him, but this value seems to be inconsequential, and for the purposes of this motion may be disregarded.

Plaintiff's motion is granted. He is entitled to recover. Entry of judgment will be entered to that effect. The amount of the judgment will be determined in further proceedings pursuant to Rule 38(c), 28 U.S.C.A.

Defendant's motion is denied.

It is so ordered.

REED, Justice (Retired), sitting by designation, JONES, Chief Judge, and MADDEN and LITTLETON, Judges, concur.

**PRESSED STEEL CAR COMPANY, Inc.,**
v.
**UNITED STATES.**
No. 48581.

United States Court of Claims.
Jan. 15, 1958.

Lee W. Eckels, Pittsburgh, Pa., William T. Hannan, Kent D. Thorup, Washington, D. C., Thorp, Reed & Armstrong, Pittsburgh, Pa., Canfield, Schell, Hannon & Castiello, Washington, D. C., on the brief, for plaintiff.

Philip W. Lowry, Washington, D. C., with whom was George Cochran Doub, Asst. Atty. Gen., for defendant.

MADDEN, Judge.

The plaintiff sues for $73,594.71 plus interest thereon which, it says, should

have been but was not reimbursed to it when it was paid for a cost plus fixed fee contract with the Government. The amount in question was paid by the plaintiff to the Commonwealth of Pennsylvania pursuant to the provisions of the Pennsylvania Capital Stock Tax Act of June 7, 1879, as amended.

The plaintiff was, during the years of the performance of the contract here in question, a Pennsylvania corporation, with its executive offices in Pittsburgh and two manufacturing plants, one in Pennsylvania and one in Illinois. In 1941 the plaintiff made a contract with the Government to manufacture 900 Medium Tanks, M–4. The contract was, in succeeding years, amended and supplemented and performance continued until December 31, 1945. The plaintiff pro-

duced, in all, 10,000 tanks. The contract contemplated performance in, and was in fact performed in, the plaintiff's Illinois plant.

As we have said, the contract was a cost plus fixed fee contract. It contained voluminous provisions as to what costs should, and what should not, be reimbursable by the Government. None of the provisions, affirmative or negative, was plainly applicable to the Pennsylvania Capital Stock Tax here in question. Our task is, then, to construe such particular provisions as were written in the contract, and the contract as a whole, to determine whether the tax was reimbursable.

The pertinent provisions of the contract relating to reimbursement appear in our findings 6 and 7.* In Title IV,

---

\* 6. Article IV–A of Title IV of the contract deals, in pertinent part, with the subject of costs to be reimbursed by defendant, as follows:

"Title IV
"Cost of the Work Under Titles I and III

"Article IV–Reimbursement for costs
"1. The Contractor shall be reimbursed in the manner hereinafter described for its costs and in the performance of the work under Titles I and III hereof, as approved or ratified by the Contracting Officer, determined in accordance with the following provisions:

"(a) Cost of performing this contract.
"(1) *General rule.*—The cost of performing this contract shall be the sum of the direct costs including therein expenditures for materials, direct labor and direct expenses incurred by the Contractor in performing this contract; and the proper proportion of any indirect costs (including therein a reasonable proportion of management expenses) incident to and necessary for the performance of this contract.

"(2) *Elements of cost.*—In general, the elements of cost may be defined for purposes of this contract as follows:

"*a.* Manufacturing cost, which is the sum of factory cost (see paragraph (3) of this section) and other manufacturing cost (see paragraph (4) of this section);

"*b.* Miscellaneous direct expenses (see paragraph (5) of this section);

"*c.* General expenses, which are the sum of indirect engineering expenses, usually termed 'engineer-overhead' (see

paragraph (6) of this section) and expenses of distribution, servicing and administration (see Paragraph (7) of this section).

"(3) *Factory cost.*—Factory cost is the sum of the following:

\* \* \* \* \*

"*f. Indirect factory expenses.*—Items usually termed 'factory overhead', which are not directly chargeable to the factory cost of performing this contract but which are properly incident to and necessary for the performance of this contract and consist of the following:

\* \* \* \* \*

"*iv. Fixed charges and obsolescence.*—The prorata share of recurring charges with respect to property used for manufacturing purposes of this contract, such as premiums for fire and elevator insurance, property taxes, rentals and allowances for depreciation of such property.

\* \* \* \* \*

"(4) *Other manufacturing cost.*—Other manufacturing cost as used in paragraph (2) of this section includes items of manufacturing cost which are not properly or satisfactorily chargeable to factory cost (see paragraph (3) of this section) but which upon a complete showing of all pertinent facts are properly to be included as a cost of performing this contract.

\* \* \* \* \*

"(7) *Expenses of distribution, servicing and administration.*—Expenses of distribution, servicing and administration, which are treated in this section as

Article IV 1 (a) (1) headed "General rule" it is said that—

> "the proper proportion of any indirect costs (including therein a reasonable proportion of management expenses) incident to and necessary for the performance of this contract"

is reimbursable. Under Article IV 1 (a) (7) headed "Expenses of distribution, servicing and administration" it is provided that, *inter alia*, the cost of "the general administration of the business, such as" a list of named kinds of expenses, one item of the list being "other expenses" is reimbursable. Article IV 1 (a) (9) and its subdivision *c* provided for the allocation of administrative expenses in the proportion which the direct cost of the contract work bears to the direct cost of all of the contractor's work. The provisions referred to above are, of course, orthodox provisions for cost accounting.

The Pennsylvania Capital Stock Tax, the reimbursability of which is here in question, is based primarily upon the value, not of the corporation's assets, but of its capital stock. That value is its selling price at the end of the tax year, provided that such value is not less than its average selling price during the year, not less than the value which it should have had in view of its earnings for the year, and not less than the stock value

a part of general expenses in determining the cost of performing this contract (see paragraph (2) of this section), comprehend the expenses incident to and necessary for the performance of this contract, which are incurred in connection with the distribution and general servicing of the Contractor's products and the general administration of the business, such as—

"*a.* Compensation for personal services of employees. * * *.

"*b.* Bidding and general selling expenses. * * *.

"*c.* General servicing expense. * *.

"*d.* Other expenses. * * *.

"i. * * *.

"ii. Allowances for interest on invested capital are not allowable as costs of performing this contract.

"iii. Among the items which shall not be included as a part of the cost of performing this contract or considered in determining such cost, are the following:

* * * * *

"Federal and State income and excess profits taxes and surtaxes; * * *

* * * * *

"(9) *Allocation of indirect cost.*—No general rule applicable to all cases may be stated for ascertaining the proper proportion of the indirect cost to be allocated to the cost of performing this contract. Such proper proportion depends upon all the facts and circumstances relating to the performance of this contract. Subject to a requirement that all items which have no relation to the performance of this contract shall be eliminated from the amount to be allocated, the following methods of allocation are outlined as acceptable:

* * * * *

"*c. Administrative expenses (or 'overhead').*—The allowable expenses of administration (see paragraph (7) of this section) or *other* general expenses except indirect engineering expenses, bidding and general selling expenses, and general servicing expenses shall ordinarily be allocated or distributed to the cost of ·performing this contract on the basis of the proportion which the manufacturing cost (see paragraph (2) of this section) attributable to this contract bears to the total manufacturing cost during the period within which this contract is performed.

* * * * *

"(10) Such other items, not enumerated above, whether of a similar or dissimilar nature, which in the opinion of the Contracting Officer are properly chargeable to the cost of the work under this contract. When such item is allowed by the Contracting Officer, it shall be specifically certified as being allowed under this paragraph."

7. In this contract there are only three express provisions relating to taxes. They are the provisions for the reimbursability (1) of "property taxes" as recurring charges with respect to property used for manufacturing purposes; (2) "payments to unemployment, old age and social security, Federal and State funds" as miscellaneous indirect factory expenses and (3) for the nonreimbursability as distribution, servicing and administration expenses of "Federal and State income and excise profit taxes and surtaxes" and "taxes and expenses on issues and transfers of capital stock".

indicated by the intrinsic value of its tangible property and assets, its good will, its franchises and privileges "as indicated by the material results of their exercise" taking into account also the amount of the corporation's indebtedness. We have reproduced the statute in finding 11.†

† 11. The Pennsylvania Capital Stock Tax Act of June 7, 1879, as amended, 72 P.S. §§ 1871, 1901, 1902, and in force in Pennsylvania during the years of the performance of this contract, 1941–1945, is as follows:

"Section 20. That hereafter, except in the case of corporations of the first class, nonprofit corporations, and cooperative agricultural associations not having capital stock and not conducted for profit, banks, savings institutions, title insurance, or trust companies, building and loan associations, and foreign insurance companies, it shall be the duty of every corporation having capital stock, every joint-stock association, limited partnership, and every company whatsoever, now or hereafter organized or incorporated by or under any laws of this Commonwealth, and of every corporation, joint-stock association, limited partnership, and company whatsoever, now or hereafter incorporated or organized by or under the law of any other State or Territory of the United States, or by the United States, or by any foreign government, and doing business in and liable to taxation within this Commonwealth, or having capital or property employed or used in this Commonwealth by or in the name of any limited partnership or joint-stock association, company, or corporation whatsoever, association or associations, copartnership or copartnerships, person or persons, or in any other manner, to make annually on or before the fifteenth day of March, for the calendar year next preceding, a report in writing to the Department of Revenue on a form or forms to be prescribed and furnished by it, setting forth, in addition to any other information required by the Department of Revenue:

"*First.* The amount of its capital stock at the close of the year for which report is made, together with the highest selling price per share, and the average selling price thereof during said year.

"*Second.* Its debt account.

"*Third.* Its income account, together with the disposition of any net income, and its profit and loss statement.

"*Fourth.* Its general balance sheet.

"*Fifth.* Its real estate and tangible personal property, if any, owned and permanently located outside of the Commonwealth, and value of the same; and the value of the property, if any, exempt from taxation.

"*Sixth.* A valuation and appraisal, in the manner hereinafter provided, of the capital stock of the said corporation, company, joint-stock association, or limited partnership, at its actual value in cash as it existed at the close of the year for which the report is made.

"The affidavit of two of the officers of such corporation, limited partnership, joint-stock association or company, shall be attached to said report. Such affidavit shall be in the form required by the Department of Revenue, but shall state, in addition to any other averments required by the department, that, with fidelity and according to the best of their knowledge and belief, the affiants have estimated, valued and appraised, as shown in said report, the capital stock of the said corporation at its actual value in cash as it existed at the close of the year for which report is made; not less, however, than, first, the average which said stock sold for during the year; and second, not less than the price or value indicated or measured by net earnings or by the amount of profit made and either declared in dividends, expended in betterments, or carried into the surplus or sinking fund; and third, not less than the actual value indicated or measured by consideration of the intrinsic value of its tangible property and assets, and of the value of its good will and franchises and privileges, as indicated by the material results of their exercise, taking also into consideration the amount of its indebtedness. * * *

"The time for filing annual reports may be extended; taxpayers may be permitted to file their annual and tentative reports on a fiscal year basis; the procedure in case the Department of Revenue is not satisfied with the appraisement made by the officers of the taxpayer, and the penalties for failing to file reports and pay taxes shall be as prescribed by law.

"Section 21. (a) That every domestic corporation other than corporations of the first class, non-profit corporation, and cooperative agricultural associations not having capital stock and not conducted for profit, and every joint-stock association, limited partnership, and company whatsoever, from which a report is required under the twentieth section here-

# 954

In Commonwealth v. Union Shipbuilding Co., 271 Pa. 403, 114 A. 257, the Supreme Court of Pennsylvania held that when a corporation had manufacturing plants in Pennsylvania and in Maryland, it was proper for the Pennsylvania taxing authorities to apportion the total value of the corporation's stock between the value of the assets of the corporation in Pennsylvania and those in Maryland, and assess the Pennsylvania tax against only the Pennsylvania proportion of the whole value of the capital stock. The tax in question in the instant case was assessed and paid on that basis. That would mean, roughly, that, to the extent that the profits made by the Illinois operation were proportionate to the physical assets in Illinois, the effect of those profits in setting the market price of the corporation's stock, and hence its value for tax purposes, would be eliminated in determining the amount of the Pennsylvania tax.

■ The Pennsylvania Capital Stock Tax paid by the plaintiff was, then, based roughly upon that part of the market value of the corporation's stock which was created by the profits made by the operations of the corporation's plant in Pennsylvania and the value of the physical assets of its plant in Pennsylvania. The corporation's rented office space in the Koppers Building in Pittsburgh, and the furnishings of the office, would have little effect upon the value of its stock. Any money of the corporation in Pennsylvania banks, or securities owned in Pennsylvania might have affected the market value of the stock.

■ The Pennsylvania plant of the plaintiff, and the profits made by the operation of that plant, and money or securities owned by the plaintiff in Penn-

sylvania had no relation to the performance of the plaintiff's contract with the Government, or the cost of that performance. It is not conceivable that if the parties, in negotiating the terms of the contract, had put their minds upon the question which faces us here, and had analyzed the nature and operation of the Pennsylvania Capital Stock Tax, they would have agreed that it should be a reimbursable cost of the performance of the Illinois contract. The language of the contract is, at best, barely susceptible of an interpretation which would include this tax as a reimbursable cost. We should not so interpret it as to make a contract for the parties which, we are satisfied, they would not knowingly have made for themselves.

■ The plaintiff urges that the tax was of the nature of a franchise tax, the payment of which was necessary to preserve the plaintiff's corporate existence. The tax statute does not so indicate. It would seem that the effect of non-payment would be the same as the effect which non-payment of any other tax would have. As early as 1882 the Supreme Court of Pennsylvania held that the Capital Stock Tax is a tax upon the property and assets of the corporation, although the value of the capital and assets is arrived at by ascertaining the value of the capital stock. Commonwealth v. Standard Oil Co., 101 Pa. 119, 145. It is not a franchise tax.

The plaintiff is not entitled to recover and its petition will be dismissed.

It is so ordered.

JONES, Chief Judge, REED, Justice (Ret.), sitting by designation, WHITAKER and LITTLETON, Judges, concur.

---

of, shall be subject to, and pay into the Treasury of the Commonwealth annually, through the Department of Revenue, a tax at the rate of five mills upon each dollar of the actual value of its whole

capital stock of all kinds, including common, special, and preferred, as ascertained in the manner prescribed in said twentieth section."