**PORTLAND WEB PRESSMEN'S UNION LOCAL NO. 17, an unincorporated association, Plaintiff,**

v.

**OREGONIAN PUBLISHING COMPANY and Journal Publishing Company, corporations, and each of them, Defendants.**

**Civ. No. 60–17.**

United States District Court
D. Oregon.

April 14, 1960.

Clifford D. O'Brien, Portland, Or., for plaintiff.

Manley B. Strayer, James P. Rogers, Hart, Rockwood, Davies, Biggs & Strayer, William F. Lubersky, Koerner, Young, McColloch & Dezendorf, John J. Higgins, III, Milton C. Lankton and Black, Kendall & Tremaine, Portland, Or., for defendants.

KILKENNY, District Judge.

Defendants move to dismiss plaintiff's complaint and this action on the grounds that the court lacks jurisdiction over the subject matter and that the complaint fails to state a claim upon which relief can be granted.

Plaintiff is an unincorporated association of individuals, with its principal office and place of business in Portland, Oregon. It is a labor organization, with a membership of approximately 150 individuals, and represents those persons in an industry effecting commerce as defined in the Labor Management Relations Act of 1947. Defendants are corporations organized under the laws of the State of Oregon engaged in the publication of daily newspapers in Portland. Defendants utilize substantial amounts of raw materials imported by them into the State of Oregon from other states in the union. They distribute their newspapers and other products in the states of California, Idaho, Washington and others. Such activities of defendants affect "commerce" within the meaning of the word as defined by the Labor Management Relations Act of 1947.

Approximately 120 members of plaintiff were employed as pressroom employees of one or the other of defendants, or both. The employees performed services in the production of newspapers for defendants. The plaintiff was the exclusive representative of the employees of each of defendants for purposes of collective bargaining with respect to wages, hours of work and other conditions of employment.

Effective January 1, 1958, plaintiff and defendants entered into a collective bar-

gaining agreement governing wages, hours and working conditions of the pressroom employees of defendants, and each of them, said contract to expire on the 31st day of December, 1959. Under appropriate provisions of the agreement the parties commenced negotiations on September 28, 1959, for a new agreement and such negotiations continued until November 10, 1959, and thereafter as hereinafter recited. On November 10, 1959, Stereotypers Local Union No. 48 and the members thereof commenced a strike against each of defendants, and placed picket lines at the newspaper publishing plants of each of defendants, which picket lines have been continuously maintained by said union, and the members thereof, from the 10th day of November, 1959, to date. In said strike the said Stereotypers Union, and the members thereof, are making certain contentions. Plaintiff at all times after November 10, 1959, and until January 2, 1960, "unequivocally advised its members of its and their obligation not to strike and not to engage in work stoppages while the contract between the plaintiff and defendants remained in effect."

Notwithstanding such unequivocal advice, the individual members of the plaintiff who were and are pressroom employees of each of defendants declined to cross the picket lines maintained by the members of the Stereotypers Union and declined to report for or to perform their work in the production of the defendants' newspapers from and after the 10th day of November, 1959, until the 2nd day of January, 1960, and the said individual members of plaintiff union previously employed by defendants at the time of the commencement of said strike continued to refuse to cross such picket lines and refused to work for defendants in defendants' plants behind such picket lines. From November 18, 1959, to the filing of the complaint, no representative of either of the defendants called or requested a meeting for the purpose of conducting further negotiations with reference to the terms of a new agreement to supplant or supersede the agreement which expired on the 2nd day of January, 1960. On December 27, 1959, the plaintiff addressed a communication to each of defendants advising of the fact that the old contract would expire on December 31, 1959, and demanding a meeting of representatives for the purpose of negotiating a new contract. On December 28, 1959, defendants directed a letter to plaintiff as follows:

"* * * On November 10, 1959, the Stereotypers' Union started a strike against the Oregonian and Journal publishing companies. Your union and its members failed and refused to honor the then existing agreement between the publishing companies and Portland Web Pressmen's Union No. 17. This failure and refusal occurred notwithstanding the fact that under the agreement your union and its members had pledged themselves not to strike.

"The refusal by the members of your union to comply with their obligations to the publishers and their refusal to carry out the instructions given them by the publishers to perform their duties have continued without interruption since November 10, 1959. The pressmen who have failed to appear for work over this long extended period are no longer employees.

"With respect to meeting for the purpose of negotiating a new contract, we are ready to meet with you at any time you can establish that you represent a majority of our employes in an appropriate unit. * * * [Signatures.]"

After receipt of said letter, plaintiff addressed a night letter to said defendants, which reads as follows:

"This acknowledges on behalf of Portland Web Pressmen's Local 17 receipt late today of your letter of December 28, 1959, in which you take the position that pressroom employees governed, along with you, by our current agreement which remains in effect through December

31, 1959, are no longer employees of your two newspapers. Local 17 emphatically disagrees.

"If you had a grievance in this respect since November 10, you should have resorted to the settlement procedures provided for in our joint and effective agreement.

"Local 17 hereby refers the differences between the parties arising out of your said letter of December 28, 1959, to the Joint Standing Committee, and requests a meeting on these emergency issues forthwith. Certainly, there is no occasion for either the publishers of the union to take refuge in the 'within five days' provision to delay such a meeting beyond sometime on the 29th day of December, 1959.

"Our Standing Committee members stand ready to meet with the publisher members of the same committee upon the shortest telephone notice to the undersigned at or through CH 4–8359."

Neither of defendants responded to such night letter. On January 2, 1960, plaintiff declared itself and its members on strike against defendants, and each of them, under the claim that defendants had refused to bargain with the plaintiff as the exclusive representative of the pressroom employees of the defendants with reference to wages, hours and other conditions of work, and also to enforce plaintiff's proposals for a new contract to supplant and supersede the agreement between the parties. On January 4, 1960, plaintiff addressed another communication to defendants, the material portion of which reads as follows:

"* * * The undersigned, Union appointed members of the Joint Standing Committee, hereby call upon the newspaper appointees of the same committee to meet with them without further delay to deal with the above mentioned differences between the parties to the basic agreement. Those differences having arisen prior to January 1, 1960, and having been referred to the Joint Standing Committee prior to that date, the Union position is that the entire adjustment of differences procedures which are provided for in the basic agreement remain available and applicable to the parties, and obligatory upon them until the differences have reached final determination through utilization, and, if necessary, exhaustion of those procedures.

"The undersigned are ready to meet at your call upon any short but reasonable notice. You are earnestly requested to arrange a Joint Standing Committee meeting to handle these differences. Should you fail to arrange such a meeting to be held prior to Monday, January 11, 1960, the undersigned and the Union for its protection and the protection of its members will be obligated to take such legal actions as are indicated in the premises."

On January 11, 1960, defendants directed a communication to plaintiff, which reads as follows:

"The Oregonian and the Oregon Journal have received and given careful consideration to your letter of January 4 addressed to the attention of Messrs. Morrish and Haines, and do not agree with the positions you have taken. It therefore appears that no useful purpose would be served by complying with your request."

Plaintiff claims that a justiciable controversy exists between the plaintiff and the defendants and that the court has jurisdiction over the subject matter of the suit under the provisions of the Labor Management Relations Act of 1947, 29 U.S.C.A. § 185.

Among other provisions, the contract between the parties contains the following:

"Section 3(a). The Union is recognized as the collective bargaining agency for employes engaged in the operation of all web presses, * *

* * * * * *

"Section 4. A joint Standing Committee, composed of two representatives of the parties of the first part and two representatives of the party of the second part shall be appointed, * * * *To this committee shall be referred all questions which may arise concerning the construction to be placed upon any clause of this contract or alleged violation thereof which cannot be settled otherwise * * *. The standing committee shall have jurisdiction to determine whether the disputed issue is covered by the terms of this contract. * * ** 

"Section 5. It is agreed that fruitless controversies must be avoided, and every effort made to maintain good feeling and harmonious relations. To accomplish this both parties will in every instance give prompt attention to disputes and will in good faith endeavor to settle all differences by conciliation. *Under all circumstances business shall be continued without interference or interruption in a regular and orderly manner, until the dispute is settled by the method set forth in Section 4 of this contract.* * * *

\* \* \* \* \* \*

"Section 20. *The authority over the pressroom shall be vested in the Companies.* Each Company will appoint one foreman to supervise the operation of its pressroom. The foreman shall at no time be considered to be a member of any operating crew and shall be a member of the Union. *All working time belongs to the Companies and pressroom employes and crews shall perform any work pertaining to the Web Pressmen's trade which may be required of them by the foreman. Employes may not leave the office during working hours except with permission of the foreman and no chapel meetings of any kind shall be held during working hours,* except by agreement between the chapel chairman and the foreman.

\* \* \* \* \* \*·

"Section 24. *During the life of this agreement the party of the second part agrees not to strike and the parties of the first part agree not to lockout the party of the second part.* The union reserves the right to refuse to execute any struck work received from or destined to any unfair employing printer or publisher where a strike or lockout exists which has been authorized by the International Printing Pressmen's and Assistants' Union of North America." (Emphasis added.)

The above facts appear in the complaint. The relief sought by the plaintiff is dual in nature. First, the plaintiff demands declaratory relief in connection with the following problems:

(1) Did defendants have the right to terminate the employment of plaintiff's members.

(2) Are defendants required to invoke the procedures outlined in Section 4 of the contract.

(3) Are defendants obligated to participate in the procedures of Section 4 under the facts stated in the complaint.

(4) Does such obligation, if any, continue to exist. Second, plaintiff demands an injunction against defendants requiring the defendants to carry out the obligations, if any, declared to be binding upon defendants.

1. Under the provisions of Title 28 U.S.C.A. §§ 1331 and 1332, the jurisdiction of a federal court cannot be invoked unless: (1) the controversy arises under the constitution, laws or treaties of the United States and involves $10,000; or (2) a controversy involving $10,000 arises between citizens of different states.

On oral argument counsel for the plaintiff conceded that independent federal jurisdiction was not conferred by either the United States Arbitration Act or the Federal Declaratory Judgments Act. It is plaintiff's contention that jurisdiction rests in the Federal courts under Title 29 U.S.C.A. § 185, which provides:

"(a) Suits for violation of contracts between an employer and a labor organization * * * may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."

■ Said section confers jurisdiction upon the federal courts to render a declaratory judgment on an existing contract. Kennametal, Inc. v. International Union, D.C.W.D.Pa.1958, 161 F.Supp. 362; Employing Plasterer's Association of Chicago v. Operative Plasterers, etc., D.C.N.D.Ill.1959, 172 F.Supp. 337. Said section extends jurisdiction in a proper case to actions for specific performance of an arbitration agreement. Textile Workers Union v. Lincoln Mills, 1957, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972. Jurisdiction under the Declaratory Judgments' Act has been consistently refused where the relief sought involves an expired union contract. Shank v. N. L. R. B., 7 Cir., 1958, 260 F.2d 444; Mackay v. Loew's, Incorporated, D.C.S.D. Cal.1949, 84 F.Supp. 676; Textile Workers Union v. Bates Mfg. Co., D.C.Me. 1958, 158 F.Supp. 410.

■ We must now approach the question as to whether the complaint states sufficient facts to show a justiciable controversy. A justiciable controversy is distinguished from a difference or dispute of a hypothetical or abstract character; from one that is abstract or moot. The controversy must be definite and concrete, touching the legal relations of the parties having adverse legal interests. It must be a real and substantial controversy admitting of specific relief through a decree of conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts. Aetna Life Insurance Co. v. Haworth, 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617; St. Pierre v. U. S., 319 U.S. 41, 63 S.Ct. 910, 87 L.Ed. 1199.

■■ The contract described in the complaint expired on December 31, 1959,

and the complaint was not filed until January 15, 1960. I find nothing in the complaint which alleges any right in the plaintiff or its members which was vested during the term of the contract. It might be argued that the complaint shows a disagreement as to the employment status of the plaintiff's members as of December 28, 1959, when the plaintiff attempted to invoke the procedures provided by Section 4 of the contract. However, the plaintiffs had refused to work since November 10, 1959, and in my opinion, the members and the union had clearly violated the "No Work Stoppage" and "No Strike" provisions of the contract when the members refused to work on and subsequent to November 10, 1959. The period of time from the date of demand on December 28, 1959 to December 31, 1959 is so minimal that the doctrine of "de minimis" should be applied. This doctrine has been recognized in the federal courts. Hunter v. Madison Avenue Corp., 6 Cir., 1949, 174 F.2d 164, 167. The doctrine means that the law does not care for small things. Porter v. Rushing, D.C., 65 F.Supp. 759, 760. The doctrine means that the law does not bother with trifles. Dennison West 25th Street Implement Co. v. Great Atlantic & Pacific Tea Co., Ohio App., 69 N.E.2d 79, 80.

Since, in any event, the ultimate relief which would be granted would be limited to determining the status during the last few days of the contract, the Court should not take jurisdiction.

Plaintiff's counsel attach great importance to the decision of the United States Supreme Court in Textile Workers Union v. Lincoln Mills of Alabama, supra. This case, in my opinion, supports the position of the defendants, rather than that of the plaintiff. The wage claims involved in the Lincoln case accrued during the life of the contract and these claims were vested rights on which the Court exercised its jurisdiction. The opinion went on to say that the matters which created no vested rights could not be considered. There is no claim in this case that wage or any other claim, other

than the claim of the right to arbitrate, is involved.

Item Company v. New Orleans Newspaper Guild, 5 Cir., 1958, 256 F.2d 855; Wilson Bros. v. Textile Workers Union, D.C.S.D.N.Y.1954, 132 F.Supp. 163; Local No. 520 etc. v. Glendale Mfg. Co., D.C.W.D.N.C.1959, 179 F.Supp. 222; United Steel Workers v. New Park Mining Co., 10 Cir., 1959, 273 F.2d 352, do not support the plaintiff's position. Accrued substantive rights were involved in each one of those cases. Furthermore, in United Steel Workers, the vital element of "unwillingness to work" was not present.

■ The language of the contract makes it absolutely clear that the parties intended to provide an orderly method for the settlement of disputes and that there would be no work stoppage or strike. Without question, the plaintiff understood that neither the plaintiff nor its members had the right to stop work. The complaint alleges that the plaintiff unequivocally advised its members *of its and their obligation* not to strike and not to engage in work stoppages, while the contract between the parties remained in effect. The complaint also shows that notwithstanding the advice of the plaintiff, every member of the plaintiff declined to cross the picket lines maintained by the other union and refused to report for or perform their work in production of defendants' newspapers behind the picket line from November 10, 1959, until the expiration of the contract. I am of the opinion that the intention of the parties to the contract is clear and that it is unnecessary to invoke any of the rules of contractual construction. However, if we resort to well-known rules of construction, there can be no question of the intention of the parties in connection with the plaintiff's contractual obligations to continue with its work, irrespective of picket lines.

■ I shall state a few applicable rules of construction. The law does not permit a contract to be remade by the Courts. Dermott v. Jones, 2 Wall. 1, 69 U.S. 1, 17 L.Ed. 762; Lowber v. Bangs, 2

Wall. 728, 69 U.S. 728, 17 L.Ed. 768; Gavinzel v. Crump, 22 Wall. 308, 89 U.S. 308, 22 L.Ed. 783; Pressed Steel Car Co. v. United States, 157 F.Supp. 950, 141 Ct.Cl. 318, certiorari denied 356 U.S. 967, 78 S.Ct. 1007, 2 L.Ed.2d 1074. In construing a contract, the court must examine all of its parts. Black v. United States, 91 U.S. 267, 23 L.Ed. 324; Cove Irrigation District v. American Surety Company, 9 Cir., 1930, 42 F.2d 957, certiorari denied 282 U.S. 891, 51 S.Ct. 103, 75 L.Ed. 785. A business contract must be construed with such business sense as it naturally would be understood by intelligent men of affairs. E. I. DuPont DeNemours & Co. v. Claiborne-Reno Co., 8 Cir., 1933, 64 F.2d 224, 89 A.L.R. 238; Erie Railway Co. v. Ohio Public Service Co., 6 Cir., 1932, 62 F.2d 83. It is clear that each of the parties, and in particular the plaintiff, construed this contract so as to require the members of the union to cross the picket line. Otherwise, the plaintiff would not have directed its members to continue work and cross the picket line. The practical construction or interpretation of a contract by the parties is entitled to great weight in determining its proper interpretation. Steinbach v. Stewart, 11 Wall. 566, 78 U.S. 566, 20 L.Ed. 56; City of Chicago v. Sheldon, 9 Wall. 50, 76 U.S. 50, 19 L.Ed. 594. The practical construction against interest, by a party to a contract, may constitute the strongest evidence of intent. Cutting v. Bryan, 9 Cir., 1929, 30 F.2d 754, certiorari denied 279 U.S. 860, 49 S.Ct. 418, 73 L.Ed. 1000; United States for Use and Benefit of Pierce Steel Corp. v. Miller, 2 Cir., 1936, 81 F.2d 8. As previously mentioned, the only exception to the no strike clause in the contract deals with a subject not here in controversy. Since only one exception is mentioned, the rule of expressio unius est exclusio alterius would be applicable and all exceptions not mentioned would be excluded. United States ex rel. and for Use of Tenn. Valley Authority v. Powelson, 4 Cir., 1941, 118 F.2d 79, 88; 12 Am.Jur. Contracts, § 239, p. 769. The Oregon Supreme Court applies the

same rules of construction as the Federal Courts above mentioned. Biersdorf v. Putnam, 181 Or. 522, 182 P.2d 992; Courteen Seed Co. v. Abraham, 129 Or. 427, 275 P. 684; Nunner v. Erickson, 151 Or. 575, 51 P.2d 839; Burton v. Oregon-Washington Railroad & Navigation Co., 148 Or. 648, 38 P.2d 72; Kontz v. B. P. John Furniture Co., 167 Or. 187, 115 P.2d 319; Markham & Callow, Inc. v. International Woodworkers of America, etc., 170 Or. 517, 135 P.2d 727.

■ The failure of an employee to cross a picket line to perform his job violates the no strike provision of an agreement. N. L. R. B. v. Rockaway News Supply Co., 345 U.S. 71, 73 S.Ct. 519, 97 L.Ed. 832. The union must be held responsible for the mass action of its members. United States v. International Union, D.C.Md.1948, 77 F.Supp. 563, affirmed 85 U.S.App.D.C. 149, 177 F.2d 29, certiorari denied 338 U.S. 871, 70 S.Ct. 140, 94 L.Ed. 535; United States v. Brotherhood of Railroad Trainmen, etc., D.C.N.D.Ill.1951, 96 F.Supp. 428. Since the prevention of a strike is the chief advantage which an employer can reasonably expect from a collective bargaining agreement, the failure to cross the picket line was a material breach of the contract. United Electrical, Radio & Machine Workers v. N. L. R. B., 1955, 96 U.S.App.D.C. 46, 223 F.2d 338, certiorari denied 350 U.S. 981, 76 S.Ct. 466, 100 L.Ed. 850, rehearing denied 351 U.S. 915, 76 S.Ct. 692, 100 L.Ed. 1448; Boeing Airplane Co. v. Aeronautical Indus. etc., of Machinists, D.C.Wash. 1950, 91 F.Supp. 596, affirmed 9 Cir., 1951, 188 F.2d 356, certiorari denied 342 U.S. 821, 72 S.Ct. 39, 96 L.Ed. 621. The no strike clause is the very heart of a labor relations agreement, Boeing Airplane Co. v. Aeronautical Indus. etc. of Machinists, supra. The violation of the no strike clause destroys the union's right to compel arbitration. Cuneo Press v. Kokomo Paper, 7 Cir., 1956, 235 F.2d 108, certiorari denied 352 U.S. 912, 77 S.Ct. 149, 1 L.Ed.2d 119; W. L. Mead, Inc. v. International Brotherhood of Teamsters, etc., D.C.Mass.1955, 129 F.

Supp. 313, affirmed 1 Cir., 230 F.2d 576, dismissed 352 U.S. 802, 77 S.Ct. 21, 1 L. Ed.2d 37.

N. L. R. B. v. Knight Morely Corp., 6 Cir., 1958, 251 F.2d 753, does not support the plaintiff's position. If anything, it supports defendants' contention that the National Labor Relations Board has jurisdiction over all questions in this case dealing with any right to reinstatement or further representation. In that case, the vested and accrued rights of 103 discharged employees were involved and such rights vested prior to the expiration of the contract.

■ From the history of the National Labor Relations Act and from the decisions rendered thereunder, it is manifest that the purpose of the Act was to establish a single paramount administrative or quasi-judicial authority to develop federal law relating to collective bargaining and the only rights made enforceable by the Act are those determined by the Board to exist under the facts of each case. National Licorice Co. v. N. L. R. B., 309 U.S. 350, 60 S.Ct. 569, 84 L.Ed. 799; Amazon Cotton Mill Co. v. Textile Workers Union, 4 Cir., 1948, 167 F.2d 183.

The contract between the parties cannot be read without arriving at the conclusion that the plaintiff and the defendant desired to absolutely prevent work stoppages, strikes and production interruptions of all kinds during the life of the contract. The contract specifically provides that the plaintiff should not strike and that defendants should not lock out the plaintiff. This intention is made doubly clear by the language of Section 20, which requires plaintiff and its members to do all work pertaining to their trade which may be required of them, and that the plaintiff's members should not leave the plant during working hours except with permission, and that no meetings of any kind should be held during working hours, except by special agreement. This intention is further buttressed by the language of Section 5 which requires that business shall be continued, under all circumstances,

without interference or interruption in a regular and ordinary manner, until any dispute is settled by the method as set forth in Section 4 of the contract. The only reservation of a right to strike under the contract is set forth in Section 24 following the plaintiff's agreement not to strike where plaintiff reserves the right to refuse to execute any struck work received from or destined to any unfair employing printer or publisher where a strike or lock out exists which had been authorized by the International Printing Pressmen's & Assistants' Union of North America. There is no claim by the plaintiff that any such strike existed in this dispute.

Without question, the obligation of the plaintiff and its members to continue work was required as one of the steps in the grievance procedure. Full performance of Section 5 of the contract is a requisite to a demand for performance under Section 4. Cuneo Press v. Kokomo Paper Handlers' Union, supra; Peoples v. Southern Pacific Co., 9 Cir., 232 F.2d 707. The plaintiff cannot ignore the portion of the grievance procedure under which it is obligated and at the same time require performance by defendant of another requirement of the same procedure. Cuneo Press v. Kokomo Paper Handlers' Union, supra; Peoples v. Southern Pacific Co., supra; Textile Union Workers v. Lincoln Mills, supra.

To comment on each case cited by plaintiff would unduly lengthen this already protracted opinion. It is my considered judgment that plaintiff's cases are not in point. Armstrong-Norwalk Rubber Corp. v. Local Union No. 283, D.C.Conn.1958, 167 F.Supp. 817, appeal dismissed 2 Cir., 1959, 269 F.2d 618, does not support the plaintiff's position. In that case the employees were back at work when they sought to invoke the arbitration provision. The arbitration clause in that case contained no such provision as that contained in Section 5 of this contract. I do not pass on the legal question of whether the arbitrator, under the language of the instant case, should determine whether the issues in question were to be arbitrated. Since I have held that the agreement to arbitrate is not enforceable, the other question is moot. Tenney Engineering, Inc., v. United Electrical, Radio & Machine Workers of America, D.C.N.J.1959, 174 F.Supp. 878, does not present the same set of facts as involved in the present case. In the Tenney case, the employer instituted an action for damages for breach of a no strike clause by the union. The court granted the stay pending arbitration. There was no continuing breach of the contract such as here. As in both the Signal-Stat case and the Armstrong case, the employees were working at the time the action was commenced. In Signal-Stat Corp. v. Local 475, 2 Cir., 1956, 235 F.2d 298, certiorari denied 354 U.S. 911, 77 S. Ct. 1293, 1 L.Ed.2d 1428, rehearing denied 355 U.S. 852, 78 S.Ct. 7, 2 L.Ed.2d 61, the union struck over a discharge grievance. The issue in that case was whether union liability and damages for breach of a no strike clause is an arbitrable issue. The only issue actually decided by the Court in Signal-Stat was whether the dispute of breach of a no strike clause was arbitrable under the particular arbitration clause. The court held that it was. No place in that decision did the Court have occasion to approach the question of whether a union which breaches both a no strike clause and the arbitration clause can itself enforce such clause. As a matter of fact, the members of the union in that case had returned to work, which element is entirely lacking in the present case.

In N. L. R. B. v. Rockaway News Supply, 345 U.S. 71, 73 S.Ct. 519, 97 L.Ed. 832, cited by plaintiff, the holding was that an individual employee's refusal to cross a picket line breached a no strike clause and that therefore, his employer's discharging him for such conduct did not violate the Labor Relations Act. The substance of the holding in that case was that the entire contract was not rendered void by an illegal clause and that the no strike clause was enforceable and was

breached by the employee and that whether or not prior arbitration exists, the discharge of an employee under the Labor Management Relations Act is perfectly proper if he breaches a no strike clause. I do not believe that case has anything to do with the issue of whether arbitration is enforceable by a party which is in continuing violation of the agreement, only a portion of which it seeks to enforce.

Tenney Engineering, Inc. v. United Electrical, Radio & Machine Workers, etc., supra, is readily distinguished from the case at bar. It is true that Tenney criticizes the decision in Cuneo and proceeds to use what I believe to be the same faulty reasoning which was used in the Armstrong case. In other words, the court compels arbitration on the issue of whether the union can compel arbitration. I am of the opinion that the better reasoned cases hold that the party in default and refusing to perform an essential part of the contract is in no position to insist on part performance of the portion of the contract which may be favorable to it. In any event, the factual situation was entirely different, in that the employees in the Tenney case had returned to work and there was no continuing breach as exists in the present case. In the Tenney case, the court holds that the arbitrator, and not the court, should determine whether the union was in default or could compel arbitration. This conclusion, in my opinion, is not sound. From the statement of facts in the present case, there would seem to be three disputes:

(a) that dispute which caused the strike which, like in Tenney, was a dispute with the Stereotypers union;

(b) the possible claim of the defendants against the plaintiff for damages for breach of contract, such as was made in Tenney; and

(c) the grievance of plaintiff concerning the employer's position that the employee status of plaintiff's members was terminated.

Only the third dispute is involved in this case. That type of dispute was not involved in Tenney. Plaintiff is the one who should assert this grievance and did so by the letter of December 28, 1959. At that time, also unlike Tenney, plaintiff and its members were still on strike and in breach of the contract and such strike continued until after the expiration date of the contract. No such facts were involved in Tenney.

At first glance, Encinal Terminal (4 LRRM 117) would seem to support the plaintiff's position that the employees had no obligation to go through the picket line. However, the contract in that case was entirely different than the contract before this court. The contract in Encinal did not contain a no strike clause, but did contain a provision requiring submission of the union's disputes to the grievance committee. In the Encinal case, the court reasoned that "in the absence of an express agreement" the members of the union would not be required to pass through the picket line. There is an express no strike agreement in the contract before this court. I have already construed this contract to require the plaintiff and its members to pass through the picket line. Likewise, as previously pointed out, the plaintiff itself so construed the contract.

■ I conclude:

1. That plaintiff's complaint does not present facts showing a justiciable question which could be the basis of declaratory relief.

2. That the court has no jurisdiction over the subject of the suit. The rights of plaintiff, if any, which might exist would arise by reason of the Labor Relations Act and exclusive jurisdiction would be with the National Labor Relations Board.

Counsel for defendants may prepare, serve and present to the Court an appropriate judgment of dismissal.