Walter E. Hart, J.
The petitioning union moves for an order directing Isbrandtsen Company, Inc. (hereinafter referred to as the Company) to submit a purported dispute between the parties to arbitration. The Company cross-moves for an order staying arbitration.
By the contract between the parties entered into on October 2,1961 it was agreed inter alia:
“ Section 12, severance
“ 1) The Company agrees that incorporated in this section are the provisions for the Mitchell Shipman award for Severance Pay for Engineers who have lost their positions by reason of the sale or transfer of the vessel on which they were employed.
“ 2) The Company agrees not to transfer vessel out of American registry unless it has made arrangements with the Union to escrow monies due for severance.
# # #
“ 4) Company agrees that if it sells, or bareboat charters or in any manner whatsoever transfers vessel to another Company whether American or foreign-flag registry, and at such time the Company has no other vessel under this Agreement, written notice to the Union must be given prior to any such sale, charter or transfer or prior to the execution of a contract for the same.
“ Section 13. This Agreement covers the licensed engineers employed on U. S. Flag ocean-going dry-cargo vessels owned or operated (both at present or at any time during the life of this Agreement) by the Company or any of its subsidiaries or affiliates (whether so at present or at any time during the life *506 of this Agreement) as an owner or as an agent or under a bare-boat charter; but not to include any vessel covered by an existing Agreement with a U. S. Maritime Union.
‘ * The term ‘ subsidiary ’ or ‘ affiliate ’ shall be deemed to include any business entity whether corporate, partnership, trust or individual which is controlled by or controls the Company either directly or indirectly.
“ The Union may at its discretion at any time require that any such .subsidiary or affiliate execute this Agreement and a refusal to do so will give the Union the right upon a 10 day written notice to the Company to cancel this Agreement. The failure of the Union to request a subsidiary or affiliate to sign this Agreement shall not in any way affect the obligation of the Company herein that this Agreement does cover and include all the licensed engineers on all the vessels described above whether owned or operated by the Company or any of its subsidiaries or affiliates.”
The agreement further provides that in the event a dispute or controversy arises between the parties relating to or involving the interpretation or construction of any of the terms of the agreement the issue is to be resolved, by a named arbitrator.
The facts leading to the instant controversy are as follows: The Company has a 100% stock ownership of a subsidiary, the Isbrandtsen Steamship Co. Inc. (hereinafter referred to as Steamship). By a contract entered into with Steamship on November 23, 1960 the Company agreed to sell 14 of its vessels to Steamship. The agreement provides that the sale is conditional on approval by the Federal Maritime Board, acting on behalf of the Government, of an operating differential subsidy agreement. It is further provided for in the contract that Steamship is not to acquire title or control of the ships until upon their first return to Hoboken after such approval. The Company on November 25,1960 also entered into an agreement with the American Export Lines (hereinafter referred to as Export), in which corporation the Company owns 26% of the stock, to sell to Export all of the issued and outstanding .stock in Steamship. This agreement, too,-is conditioned upon the approval by the Maritime Board and the conclusion by the Government of an operating differential subsidy agreement, in which event Steamship was to be merged with Export. While the contracts for the sale of stock and the ships have been approved by the Maritime Commission, the subsidy agreement has not as yet been approved by the Secretary of Commerce who has elected to preview the action of the Maritime Subsidy Board which heretofore consented to the subsidy. By letter dated March 15, *507 1962 Export and Steamship were notified that before reaching any decision the Secretary of Commerce had decided to seek the advice of the Comptroller General with respect to certain matters.
Though the transactions have not been consummated because of the fact that the subsidy agreements effectively binding the United States have not been approved by the proper Government officials and the title to and operation of the ships is still with the Company, the union has demanded arbitration of a purported dispute as to section 13 of the agreement whereby the Company agreed to extend the contract to vessels owned or operated by its subsidiaries or affiliates. The union urges that by the Company’s ownership of 26% of the stock of Export it controls Export so that in fact it is a subsidiary or affiliate as defined in the agreement.
In opposition to the application for the order directing arbitration and in support of the motion for the stay the Company argues that there is no bona fide arbitrable dispute since at this time it owns and operates the ships, that the transactions with Steamship and Export may never come to fruition because the Secretary of Commerce may refuse to approve the subsidy agreement. In the court’s opinion this contention is valid. Until the contingencies provided for, namely, the approval of an effective subsidy agreement and the transfer of title to the ships and stock is executed, the Company cannot be called upon to extend the agreement to Export or Steamship. As of this time the ownership and operation of the vessels is exclusively with the Company. In the event the subsidy agreement were approved and the transfer of title and control of the vessels is executed, then an arbitrable dispute — a justiciable issue — may be presented. Until that eventuality an arbitrator’s award would be in the nature of an advisory opinion. The parties have not consented to such by their agreement. It cannot be said, therefore, that the Company has defaulted in the performance of its agreement or that a bona fide dispute exists (Matter of Bullard v. Grace Co., 240 N. Y. 388) and the union’s application at this time is premature. The law in this State, at this time, places the burden of showing that a dispute is arbitrable under the agreement upon the party seeking arbitration (Matter of Essenson, 307 N. Y. 68).
The conclusion reached here by the court is buttressed by the holding in Matter of Yagoda v. Picture Book Toys (157 N. Y. S. 2d 247). The matter before the court was an application by the administratrix of a deceased stockholder for an order directing that she be permitted to examine corporate books to enable her *508 to determine the book value of decedent’s stock. She had been furnished with a statement purporting to show that book value but was not satisfied and therefore the motion was made. A cross motion was made by the surviving stockholder to stay the demand for the examination of the books and for an order directing that the dispute as to book value be arbitrated as provided for in the stockholder’s agreement. In granting petitioner’s motion and denying the cross motion, the court stated (pp. 248-249): “ There is presently no dispute as to book value. There is nothing in the agreement which bound the administratrix to accept the corporation accountant’s report as the final word on the question of book value. Consequently she would have the right to examine the books to determine the value of the stock. When she has received her own report on book value and has come to a conclusion that the book value as represented in the corporation report is not an accurate statement thereof, then and in that event only will there be presented an arbitrable question. It may very well be that upon an audit of the books, the administratrix will agree with the book value as presented in the corporation report, in which event no arbitration would be needed. It would be wrong to throw this matter into arbitration at a time when no actual dispute is known to exist because until the petitioner has ascertained the facts as shown in the books of the corporation rather than shown by the self-serving report of the corporation officers, she is not in a position to determine whether she agrees with the price offered for the stock.”
In opposing the contention of the Company that no arbitrable dispute exists and that the application is premature, the union urges that the court should be governed by the statement of the Supreme Court in Steelworkers v. Warrior & Gulf Co. (363 U. S. 574, 582-583): “An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.” This, however, is not the policy of this State as expressed in Matter of Essenson (307 N. Y. 68, supra). Moreover, in this case it may not be said with positive assurance that the asserted dispute is covered by the agreement. It clearly does not provide for an advisory award by the arbitrator with respect to a nonexistent dispute which is not encompassed or envisaged by the agreement.
The union urges that since the Supreme Court in the Steelworkers case was critical of the New York view expressed in *509 International Assn. of Machinists v. Cutler-Hammer, Inc. (271 App. Div. 917, affd. 297 N. Y. 519) and that the latter holding was repudiated by the holding of the Court of Appeals in Matter of Exercycle Corp. [Maratta] (9 N Y 2d 329) that the question as to whether the request for arbitration is premature is to be decided by the arbitrator and not by the court. The fact remains that while Judge Fuld dissented in the Cutler-Hammer case and wrote for the majority in the Exercycle case, the opinion of Judge Fuld in Exercycle cited the Cutler-Hammer case along with others as authority for the proposition that arbitration will not be directed in this State where there is no bona fide dispute between the parties (pp. 33A-335).
In arriving at its conclusion in the instant matter the court is not unmindful of the fact that the Legislature has passed a bill (Sen. Pr. No. 1841, Intro. No. 1782; Ass. Pr. No. 2508, Intro. No. 2484) on the recommendation of the Law Revision Commission (N. Y. Legis. Doc., 1962, No. 65 [F]) specifically directed to overcome the holdings in Cutler-Hammer and the other cases discussed in the memorandum submitted by the commission. It provides for a new section (1448-a) of the Civil Practice Act that ‘ ‘ In determining any matter arising under this article, the court or judge shall not consider whether the claim with respect to which arbitration is sought is tenable, or otherwise pass upon the merits of the dispute.” While the bill provides that it shall be effective immediately, it has not been acted upon by the Governor. The court cannot speculate as to what action the Governor will take any more than one can anticipate whether the Secretary of Commerce, acting for the Government, will approve the subsidy agreement, and that the agreements between the parties for the transfer of title and control of the vessels will be consummated. The court, therefore, must be guided by the state of the present case law.
It would appear that even with the approval of the bill the court would still determine that the matter was not arbitrable because the application for arbitration was premature. In arriving at this conclusion the court finds that the proposed legislation is not intended to overcome the provision of section 1448 of the Civil Practice Act which provides for the arbitration of a controversy “ which may be the subject of an action ”. The controversy between the parties herein in its present state could not be the subject of an action since it merely calls for an advisory opinion. (Cf. Reed v. Littleton, 249 App. Div. 310; cf. Standardbred Owners Assn. v. Yonkers Raceway, 1 A D 2d 882.)
*510 Matter of Friedland (1 A D 2d 129) is apposite. There a partner sought arbitration as to whether he had been excluded from the affairs of a partnership and as to whether he was being wrongfully excluded from (a) participation in the conduct of the partnership business, (b) performance of his duties as a member of the partnership, (c) participation in the management and supervision of partnership assets, and (d) participation in the supervision and maintenance of the books and records of the partnership business. No other relief was asked. In reversing an order which denied a motion for a stay of arbitration and which directed the arbitrator to proceed, the court stated (pp. 130-131):
“ It is clear that the items submitted by the respondent for arbitration do not in themselves spell out a controversy that could be the subject of an action. They are merely requests for findings of fact, unconnected with any request for any type of relief.
11 Litigation, whether pursued before the courts or a more informal arbitration tribunal of the parties’ choice, is designed to resolve dispute. To that end it must have form, purpose and direction. To try out and decide the detached issues of fact here submitted for arbitration might determine certain controverted issues but would tend to hamper, rather than advance, settlement of the controversy itself. Such an arbitration would at 'best be the prelude to a later and proper submission, under which an arbitrator could resolve some controversy after the ultimate plan and purpose of the arbitration had been made apparent. It is only within the framework of the relief sought that any arbiter can sensibly determine the weight and materiality of the facts and integrate them into his final decision. While we now encourage pretrial disclosures of evidence, such evidence must be germane to an adequately pleaded cause of action, and must also be utilizable upon the ultimate trial. There is no assurance here that a second arbitrator will adopt the findings of the first arbitrator; and the law does not encourage meaningless dress rehearsals of disconnected parts of a controversy.
“ The submission is completely devoid of any demand for legal or equitable relief. No damages are requested, no injunction or accounting is asked for. All that is sought are findings that respondent has been excluded from the business This cannot even be the subject of an action for a declaratory judgment, since respondent does not ask for a declaration of the rights or legal relations of the parties with respect to their obligations (Civ. Prac. Act, § 473).
*511 “ Section 1448 does not authorize the submission to arbitration of a dispute which could not itself be the subject of an action (Matter of Kallus [Ideal Novelty & Toy Co.], 292 N. Y. 459, 462; Matter of Stern [Stern], 285 N. Y. 239; Matter of Robinson, 271 App. Div. 98). While the submission may include questions or controversies collateral, incidental, precedent, or even independent of the arbitrable issue, it is certainly not contemplated that such incidental or independent questions can be presented for arbitration entirely separate and apart from a controversy upon which a judgment may be entered (Matter of Delmar Box Co. [Ætna Ins. Co.], 309 N. Y. 60).
“ It would be fruitless to allow an arbitration based upon the present submission to proceed to the end. ‘ An agreement for arbitration ordinarily encompasses the disposition of the entire controversy between the parties, upon which judgment may be entered after judicial confirmation of the arbitration award '. (Matter of Delmar Box Co. [Ætna Ins. Co], supra, p. 63.) If the arbitrators merely find the facts requested, and grant no relief, no judgment can be entered thereon; but if they go further, and grant affirmative legal or equitable relief, the award would have to be vacated as exceeding the powers conferred upon them by the submission (Civ. Prac. Act, § 1462, subd. 4). There is something abhorrent to all our notions of due process in the prospect of a party going through an entire proceeding with no notice from the very outset as to what ultimate consequence may be in store for him.”
Thus, here too, the instant dispute could not be the basis of an action for declaratory judgment until the effective approval by the Government of the subsidy and by the transfer of title and control of the vessels since no justiciable issue would be presented. If there were no provision for arbitration in the agreement and an action was brought for judgment declaring the rights of the parties under the contract it would be dismissable since the court could not render an advisory opinion contingent in form. It is apparent that arbitrability of a dispute under an arbitration agreement is to be equated with a justiciable issue in an action for declaratory judgment.
The reasoning of Friedland (supra) is buttressed by the opinion of the court in Matter of Stern (Stern) (285 N. Y. 239). There the parties, husband and wife, agreed to submit to arbitration the amount of support that should be paid. In reversing a judgment entered on an arbitrator’s award, the court said (p. 241): “On this appeal we must decide whether the arbitration here was of such a character that the award could on motion be confirmed by the court and a judgment entered thereon. *512 pursuant to section 1464 of the Civil Practice Act. The subject of the arbitration was the amount of support that the husband should pay to his wife and daughter. It is well established that such matters cannot be made the subject of an action. (Ramsden v. Ramsden, 91 N. Y. 281; Johnson v. Johnson, 206 N. Y. 561.) The fact that the court has the power under section 1164 of the Civil Practice Act to provide for support in a separation action even though a judgment 'be not rendered obviously does not change the rule that a dispute over the amount to be paid by the husband for support can never, in and of itself, be the subject matter of an action. Thus, whatever the parties may have intended, the proceeding could not be considered as one under the statute (Civ. Prac. Act, § 1448) as the submissions therein described are those controversies ‘ which may be the subject of an action. ’ Respondent answers that the words £ which may be the subject of an action ’ mean no more than that the controversy must be £ a justiciable controversy, that there shall be obligation, that this obligation may be measured in a judicial manner, and that the determination is such as may be enforceable in accordance with the remedies provided by law.’ This contention was advanced in the case of Matter of Buffalo & Erie Ry. Co. (250 N. Y. 275) and there rejected.” (See, also, Matter of Robinson, 271 App. Div. 98; Matter of Kingston Homes v. Klines, 23 Misc 2d 947.)
The union is not prejudiced by the disposition here made. If the subsidy agreement with the Government becomes effective and the transaction is consummated by the transfer of title and control of the stock and ships, the parties can then litigate the issue as to whether Steamship and Export are controlled by the Company and are in fact affiliates and subsidiaries within the meaning of the contract and such other matters which it may be claimed are involved. The contract cannot now be extended to Export which concededly neither owns nor operates the ships.
In arriving at its conclusion the court does not pass upon the claim of the Company that the agreement has been vitiated by the union’s violation of its unconditional covenant not to strike during the lifetime of the agreement and that the strike was unwarranted simply because the Company determined to ascertain its legal rights to resist arbitration. Further, the court does not pass upon the claim that the union, by violating the nonstrike provision, fails to come into court with £ £ clean hands.” Nor does the court pass upon the contention of the Company that upon consummation of the transaction the vessels could be covered by an existing agreement between Export and *513 another United States maritime union so as to exclude the operation of section 13 of the agreement.
Accordingly, the application of the union for an order to compel arbitration is denied. The cross motion to stay arbitration is granted.
(Reargument)
While section 1448-a of the Civil Practice Act has been enacted (L. 1962, ch. 346) into law by the approval of the G-overnor so that the court may not inquire into the merits of the controversy, the court is not precluded from determining whether the parties are seeking arbitration of a controversy “ which may be the subject of an action ”. As stated by the court in its opinion the legislation was not intended to nullify section 1448 of the Civil Practice Act in this respect. The arbitration article was never intended to create a forum for the rendition of advisory opinions but for a more expeditious means of disposing of controversies of a justiciable nature than can be afforded by a court.
With respect to the necessity of a controversy or litigation being of a justiciable nature, the language of the court in Portland Web Pressmen’s Union v. Oregonian Pub. Co. (188 F. Supp. 859, affd. 286 F. 2d 4, cert, denied 366 U. S. 912) is most apposite. There plaintiff union sought a judgment declaring its rights under an expired collective bargaining agreement containing provision for arbitration and requesting an injunction requiring defendants to carry out their obligations, if any, which may be declared to be binding. In dismissing the complaint the court stated (p. 864): “ We must now approach the question as to whether the complaint states sufficient facts to show a justiciable controversy. A justiciable controversy is distinguished from a difference or dispute of a hypothetical or abstract character; from one that is abstract or moot. The controversy must be definite and concrete, touching the legal relations of the parties having adverse legal interests. It must be a real and substantial controversy admitting of specific relief through a decree of conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts. Aetna Life Insurance Co. v. Haworth, 300 U. S. 227, 57 S. Ct. 461, 81 L. Ed. 617; St. Pierre v. U. S., 319 U. S. 41, 63 S. Ct. 910, 87 L. Ed. 1199.”
The court concludes that section 1448-a of the Civil Practice Act does not affect section 1448 with respect to the requirement that a justiciable issue be presented to an arbitrator, as indicated by the authorities cited in its original opinion, and that it does *514 not contemplate the authorization of an award phrased in the subjunctive so as to declare rights “ when and if ” a certain event should occur.
The language quoted by the union from Matter of Exercycle Gory. (Maratta) (9 N Y 2d 329, 337) that the courts “ may not decline arbitration even when the claim would not be enforcible at law * * * [or] where an arbitrator has been asked to do what a court of law would clearly not do (see Matter of Staklinski [Pyramid Elec. Co.], 6 N Y 2d 159; cf. Matter of Grayson-Robinson Stores [Iris Constr. Corp.], 8 N Y 2d 133) ” does not indicate a contrary result. What the court meant by the language may be gleaned from the cases cited by it. These hold that an arbitrator may grant a remedy, i.e., specific performance, even in those situations where courts would not do so. They do not constitute valid authority for the contention that no justiciable issue need be presented to an arbitrator as mandated by section 1448 of the Civil Practice Act.
The belated contention advanced by the union upon the reargument of the motion that the facts reflect an anticipatory breach of the contract completely lacks substance. There is no fact to substantiate this theory. The union has not adverted to a single circumstance to indicate that the company does not intend to honor its agreement. The only thing established was that the company refused to arbitrate until it obtained a judicial mandate that it was required to do so. This was not a violation, either present or anticipated, of the terms of the agreement. Accordingly, the motion to reargue is denied.